Ryan Douglas ROSS, an infant, by Rudolph P. KANTA, his guardian ad litem, and Rudolph P. Kanta, individually, Plaintiffs and Appellants,

v.

Dwayne O. SCOTT; Nemont Packing Company, Inc., a foreign corporation; Williston Lodge No. 239, Loyal Order of Moose, a nonprofit corporation; and Robert Barke, Defendants and Appellees.

Civ. No. 10982.

Supreme Court of North Dakota.

April 10, 1986.

Chapman & Chapman, Bismarck, for plaintiffs and appellants; argued by Daniel J. Chapman.

Pearce, Anderson & Durick, and William S. Murray, Bismarck, for defendants and appellees Dwayne O. Scott and Nemont. Packing Co., Inc.; argued by William S. Murray, appearance by B. Timothy Durick.

Letnes, Marshall, Fiedler & Clapp, Grand Forks, for defendant and appellee Williston Lodge No. 239; argued by Howard D. Swanson.

GIERKE, Justice.

Ryan Douglas Ross[1] and Rudolph P. Kanta[2] appeal from a judgment dismissing their action against Dwayne O. Scott; Nemont Packing Company, Inc. (Nemont); Williston Lodge No. 239, Loyal Order of Moose (Moose Lodge); and Robert Barke for damages arising out of the death of Douglas Kanta (Kanta). They also appeal from orders denying their alternative motions for judgment notwithstanding the verdict on the issue of liability of the Moose Lodge or a new trial against all defendants except Barke.[3] We reverse the judgment and orders denying a new trial and remand for a new trial against all defendants except Barke.

After completing work at approximately 6:00 p.m. on December 23, 1980, Kanta, Barke, and others consumed a quantity of beer at their employer's shop. Barke and Kanta left the shop in Kanta's car and went to the Moose Lodge, where they arrived at approximately 8:00 p.m. Kanta drank beer while in the Moose Lodge. After leaving the Moose Lodge at approximately 11:00 p.m., Kanta took Barke home. Barke testified that he arrived home between 11:00 p.m. and 11:30 p.m.

Kanta was killed at approximately midnight when his car collided with a semi-trailer operated by Scott as an agent of Nemont at the intersection of 30th Street and Highway Nos. 2 and 85 in Williston.

Scott testified that he stopped his vehicle at the stop sign at the bottom of the incline approaching the highway but that he was not sure if he stopped for another stop sign at the entrance to the highway. Scott was starting to turn the tractor into the southbound lane when the collision occurred. At that time, the trailer was blocking both northbound lanes. When asked if he could explain why he did not see the Kanta vehicle coming, Scott replied:

"A. The only thing that I can see that I have said it ever since that night, is the fact that I never seen any headlights. I didn't believe there was any on the vehicle.

---

1. Ryan Douglas Ross is Douglas Kanta's son. He was born after Kanta's death.

2. Rudolph P. Kanta is Douglas Kanta's father.

3. The appellants have asserted that "a new trial should be granted against all defendants, with the exception of Defendant Barke, concerning whom no error is alleged."

"Q. Okay. That would be your only explanation?

"A. That is the only one."

Barke testified that Kanta's vehicle would not start at noon the day of the accident, that the battery was "down" and "we had it on a charger from approximately noon that day until we left the shop that evening." He also testified that when Kanta was taking him home that evening he heard a noise underneath the hood when they were a block or two from his home. Barke did not "know for sure if it was a fan belt, alternator belt, you know, power steering belt, or it could have been when we hit a bump in the highway." When asked, "Did you tell him you better get home or he might lose his headlights?", Barke replied, "Yes, I did, if it was his alternator belt."

Phillip Sternberger testified that shortly before the accident Kanta's headlights were "fully illuminated" at the intersection of 18th Street. Lieutenant Melvin Udland of the Williston Police Department testified that when he examined Kanta's vehicle at the scene of the accident:

"[T]he taillights were on. The front headlights had been broken out. However, the switch that you pull out to turn the headlights on was bent and could not be pushed in in order to turn off what taillights were on."

A post-mortem blood sample was drawn from Kanta. The State Toxicologist testified that his office determined that ethyl alcohol was present in the blood sample in an amount of "0.27 percent by weight." There was testimony that it is possible that a person with a blood alcohol content of 0.27 percent may not appear to be intoxicated. All of the trial witnesses who saw Kanta at the Moose Lodge testified that he did not exhibit any visible signs of intoxication.

The jury returned a special verdict providing in relevant part as follows:

"QUESTION NO. 1: Was Douglas Kanta intoxicated at the time of the accident? (Burden of proof on plaintiff)

"ANSWER: Yes

"QUESTION NO. 2: Was the intoxication of Douglas Kanta a direct cause of his death? (Burden of proof on plaintiff)

"ANSWER: Yes

\*      \*      \*      \*      \*      \*

"QUESTION NO. 4(a): Was the sale (Moose Lodge to Kanta) of alcoholic beverages to a person under 21 *not* contrary to law in this case because Moose established that certain facts (e.g. purchaser false representation, sale in good faith and in reliance upon purchaser written representation and believable legal-age appearance of purchaser) constitute a defense to a claim that the sale was contrary to law? (Proof burden on defendants)

"ANSWER: Yes

"QUESTION NO. 4(b): Did the Moose Lodge cause the intoxication of Douglas Kanta (regardless of his age) by serving alcoholic beverages to him, contrary to law under these instructions? (Proof burden on plaintiff)

"ANSWER: No

\*      \*      \*      \*      \*      \*

"QUESTION NO. 7(a): Were defendants Scott and Nemont (hereafter referred to simply as 'Scott') negligent? (Proof burden on plaintiff)

"ANSWER: Yes

"QUESTION NO. 7(b): If your answer is Yes, was Scott's negligence a direct cause of the death of Kanta? (Proof burden on plaintiff)

"ANSWER: No."

A judgment of dismissal was entered, the plaintiffs' post-trial motions were denied, and this appeal followed, in which the plaintiffs have raised issues regarding: (1) a jury instruction based on § 5–01–08.2, N.D.C.C., and the admission of evidence that Kanta had displayed a "false ID" when no witness could testify as to its contents and the Moose Lodge did not maintain a book in compliance with § 5–01–08.1, N.D.C.C.; (2) admission of evidence that Kanta did not possess a valid driver's license; (3) a stop

sign instruction; and (4) the jury's findings that Scott was negligent and that his negligence was not a direct cause of Kanta's death.

### I. Sections 5–01–08.1 and 5–01–08.2, N.D.C.C.

Appellants first urge that the trial court erred in its application of §§ 5–01–08.1 and 5–01–08.2, N.D.C.C., which provide:

"*5–01–08.1. Misrepresentation of age—Penalty—Obligations of licensee.* —Any person who shall misrepresent or misstate his age or the age of any other person, or shall misrepresent his age through presentation of any document purporting to show such person to be of legal age to purchase alcoholic beverages shall be guilty of a class B misdemeanor. Every licensee shall be required to keep a book which such licensee and his employees shall require anyone who has shown documentary proof of his age, which substantiates his age to allow the purchase of alcoholic beverages, to sign such book if the age of such person is in question. Such book shall show the date of the purchase, the identification used in making the purchase and the appropriate numbers of such identification, the address of the purchaser, and his signature."

"*5–01–08.2. Presumption of licensee's innocence when certain facts established.*—The establishment of the following facts by a person making a sale of alcoholic beverages to a person not of legal age shall constitute prima facie evidence of innocence and a defense to any prosecution therefor:

1. That the purchaser falsely represented in writing, and supported with other documentary proof, that he was of legal age to purchase alcoholic beverages.

2. That the appearance of such purchaser was such that an ordinary and prudent person would believe him to be of legal age to purchase alcoholic beverages.

3. That the sale was made in good faith and in reliance upon the written representation and appearance of the purchaser in the belief that the purchaser was of legal age to purchase alcoholic beverages."

It is undisputed that Kanta was 19 years old at the time of his death. While at the Moose Lodge, Kanta was requested to produce identification. Kanta exhibited to a waitress a "card" of some kind, but none of the witnesses at trial knew what kind of card it was or what it showed. The Moose Lodge did not keep a "book" of the kind required by § 5–01–08.1, N.D.C.C. While at the Moose Lodge, however, Kanta completed a Moose Lodge membership application form in which he represented that he was 21 years old.

The trial court instructed the jury that establishment of the factors set forth in § 5–01–08.2, N.D.C.C., constituted a "defense to a contention that the sale was contrary to law." Appellants contend that so instructing was error. We agree.

At the time of Kanta's death, our Dram Shop or Civil Damage Act, § 5–01–06, N.D. C.C., provided:[4]

"*5–01–06. Recovery of damages resulting from intoxication.*—Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property or means of support by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who shall have caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained."

The "contrary to statute" requirement is fulfilled by violation of § 5–01–09, N.D. C.C., which provides:

"*5–01–09. Delivery to certain persons unlawful.*—Any person delivering alcoholic beverages to a person under twenty-one years of age, an habitual drunkard, an incompetent, or an intoxicated person is guilty of a class A misde-

---

**4.** The statute has since been amended in respects not relevant to our discussion here.

meanor, subject to the provisions of sections 5–01–08, 5–01–08.1 and 5–01–08.2."

We have previously determined that:

"... The liability created by the Civil Damage Act has no relation to any common law liability, or to any theory of tort. It was the intention of the legislature to create liability in a class of cases where there was no liability under the common law. The act is remedial in character and should be construed to suppress the mischief and advance the remedy. It clearly gives a cause of action to every person who is injured in person, property or means of support as the result of the intoxication of any person when the intoxication was caused by the use of alcoholic beverages sold or given away in violation of law." [Citations omitted.] *Iszler v. Jorda,* 80 N.W.2d 665, 667–668 (N.D.1957).

"We believe the Legislature intended to fix liability on the maker of an illegal sale where such sale causes the intoxication of the person doing the damage." *Fladeland v. Mayer,* 102 N.W.2d 121, 123 (N.D.1960). In *Iszler v. Jorda, supra,* the parents of a minor brought a dram shop action alleging that the defendants illegally sold intoxicating liquor to their minor son and that as a result of drinking the liquor he became intoxicated, lost control of his car, and died from injuries received in an accident. We upheld, as "a fair statement of the law applicable to the case," 80 N.W.2d at 669, the following instruction:

"The plaintiffs, in order to recover in this action, must prove by a fair preponderance of the evidence; (1) that the defendants or either of them sold and delivered to the minor, William Iszler, intoxicating liquors consisting of beer and whiskey; (2) that the sale and delivery of said liquor as aforesaid caused or contributed to the intoxicated condition, if any, of said William Iszler; (3) that said intoxication, if you find he was intoxicat-

ed, contributed to and was the proximate cause of the collision with said bridge which resulted in the death of said minor; and (4) their damages." [5]

*See also Wanna v. Miller,* 136 N.W.2d 563, 570 (N.D.1965), where we said:

"It is sufficient if it be proved that a defendant who is engaged in the business of selling alcoholic beverages sold, bartered, or gave away an alcoholic beverage contrary to law ... and that the damages complained of resulted from the intoxication of the person who was sold, bartered, or given the alcoholic beverage."

■ Thus, liability may be imposed under § 5–01–06, N.D.C.C., upon a vendor of alcoholic beverages that causes intoxication of a person either by delivering alcoholic beverages to a person under 21 years of age or to an intoxicated person, contrary to § 5–01–09, N.D.C.C. Either type of delivery can result in liability if the person to whom the alcoholic beverages were delivered is or becomes intoxicated. *Murphy v. Hennen,* 264 Minn. 457, 119 N.W.2d 489 (1963).

■ For liability under the Dram Shop Act to attach to an illegal sale of alcoholic beverages to a minor who becomes intoxicated, the minor need not have been intoxicated at the time of the sale. *Maldonado v. Claud's Incorporated,* 347 Mich. 395, 79 N.W.2d 847 (1956). We disavow any inference that may be drawn from *Jore v. Saturday Night Club, Inc.,* 227 N.W.2d 889 (N.D.1975), that an illegal sale of alcoholic beverages to a minor can only result in liability under the Dram Shop Act if the minor was intoxicated at the time of the sale. As aptly stated by Justice Maddox, concurring and dissenting in *Maples v. Chinese Palace, Inc.,* 389 So.2d 120, 125 (Ala. 1980):

**5.** With regard to the element of causation, it is important to note that *Iszler v. Jorda, supra,* and the instant case deal with the recovery of damages by persons injured "in consequence of intoxication" (§ 5–01–06, N.D.C.C.), rather than

with the recovery of damages by persons injured "by any intoxicated person" (§ 5–01–06, N.D.C.C.), as in *Meshefski v. Shirnan Corporation,* 385 N.W.2d 474 (N.D.1986).

"The legislature has made the sale of intoxicating liquor to a minor a wrongful act. If a minor, a member of the protected class, is injured or is killed, as a proximate result of that wrongful act, a cause of action is stated. In other words, the furnishing of intoxicating liquor to a person considered by the legislature to be incapable, by reason of age, to comprehend its dangerous character, is a wrong for which a remedy exists."

■ To establish liability under the Dram Shop Act, the plaintiffs must show: (1) that the Moose Lodge made an illegal sale of alcoholic beverages to Kanta (either because he was under 21 years of age or because he was intoxicated); (2) that the consumption of the alcoholic beverages contributed to a state of intoxication in Kanta; and (3) that such intoxication was a cause of the accident. *Jore, supra,* 227 N.W.2d at 896.

■ The Moose Lodge asserts that its sale of alcoholic beverages to Kanta was not "contrary to statute" although Kanta was under 21 years of age, because it established a defense under § 5–01–08.2, N.D.C.C. We believe that the words "subject to the provisions of sections 5–01–08, 5–01–08.1 and 5–01–08.2" in § 5–01–09, N.D.C.C., afford a vendor of alcoholic beverages a defense to an assertion that a sale to a person under 21 was contrary to statute if the vendor is able to establish the factors set forth in § 5–01–08.2, N.D.C.C. We note that the supreme courts of Wisconsin [*Sorensen by Kerscher v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108 (1984)] and Arizona [*Brannigan v. Raybuck,* 136 Ariz. 513, 667 P.2d 213 (1983)] have held that the establishment of such factors constitute defenses in common-law negligence actions. The same language in § 5–01–09, N.D.C.C., however, also makes the delivery of alcoholic beverages to a person under 21 subject to the provisions of § 5–01–08.1, N.D.C.C.

■ Because it is undisputed that the Moose Lodge did not keep a book of the kind required by § 5–01–08.1, N.D.C.C., it was error to instruct in accordance with § 5–01–08.2, N.D.C.C. A vendor that does not keep a book of the kind required by § 5–01–08.1, N.D.C.C., may not avail itself of the provisions of § 5–01–08.2, N.D.C.C. Sections 5–01–08.1 and 5–01–08.2, N.D.C.C., must be considered together. It is the signature (in a book of the kind required by § 5–01–08.1, N.D.C.C.) of a person whose age is questioned that constitutes a false written representation meeting the requirement of § 5–01–08.2(1), N.D.C.C., that the purchaser has "falsely represented in writing, ... that he was of legal age." The "other documentary proof" [§ 5–01–08.2(1), N.D.C.C.] is the "identification used in making the purchase" (§ 5–01–08.1, N.D.C.C.), which is to be shown in the book required by § 5–01–08.1, N.D.C.C. Further, under the unique circumstances of this case, the membership application form incidentally completed by Kanta during the course of the evening does not appear to have been relied upon by the Moose Lodge in selling alcoholic beverages to Kanta. Without reliance upon Kanta's written representation, that element of a defense required by § 5–01–08.2(3), N.D.C.C., was not established. It appears that the Moose Lodge relied, if on any document, on a card Kanta exhibited to a waitress. The contents of that card are unknown because the identification used has not been shown in a book of the kind required by § 5–01–08.1, N.D.C.C.

We deem the error in instructing in accordance with § 5–01–08.2, N.D.C.C., to be prejudicial because it affected the burden of proof and we reverse and remand for a new trial. If the Moose Lodge were unable to establish a defense under § 5–01–08.2, N.D.C.C., then the plaintiffs could recover under § 5–01–06, N.D.C.C., if they established that the Moose Lodge made an illegal sale of alcoholic beverages to Kanta (the sale being illegal because Kanta was under 21), that the consumption of alcoholic beverages contributed to a state of intoxication in Kanta, and that the intoxication was a cause of the accident. If, on the other hand, the Moose Lodge established a defense under § 5–01–08.2, N.D.C.C., then

the plaintiffs could only recover under § 5–01–06, N.D.C.C., if they established that the Moose Lodge delivered alcoholic beverages to Kanta at a time when he was already intoxicated. The plaintiffs must establish intoxication in either case, but the point at which they must prove that Kanta was intoxicated is different. In one case, the plaintiffs need only establish that Kanta was intoxicated by the time the accident occurred and that the Moose Lodge's delivery of alcoholic beverages contributed to that intoxication (if the Moose Lodge does not establish a defense under § 5–01–08.2, N.D.C.C.). In the other case, the plaintiffs must establish that the Moose Lodge delivered alcoholic beverages to Kanta at a time when he was already intoxicated (if the Moose Lodge establishes a defense under § 5–01–08.2, N.D.C.C.).

Because of our determination that the trial court erred in instructing in accordance with § 5–01–08.2, N.D.C.C., we need not determine whether the court improperly received evidence that Kanta exhibited to a waitress a card of some kind when none of the witnesses at trial knew what kind of card it was or what it showed and the Moose Lodge did not keep a book of the kind required by § 5–01–08.1, N.D.C.C.

## II. Driver's License

The trial court admitted, over objection, evidence that Kanta did not have a valid driver's license because "he was under suspension" due to an accumulation of 22 points on his driving record. The court instructed the jury that "[n]o person shall drive a motor vehicle upon a highway in this state unless such person has a valid license as an operator." The plaintiffs assert that the trial court erred in admitting the evidence that Kanta did not possess a valid driver's license. We agree.

In *Knoepfle v. Suko*, 108 N.W.2d 456 (N.D.1961), the defendant offered to prove that the plaintiff had been convicted of several driving offenses, that his driver's license had been revoked, and that he had failed a driver's examination. We said, at page 465:

"This offer of proof was properly overruled. At the most it would tend to prove general incompetence only. Evidence of general competency or incompetency is not admissible upon the issue of negligence." [Citations omitted.]

*See also South v. National R.R. Passenger Corp.*, 290 N.W.2d 819, 839 (N.D.1980), where we said that "evidence of one's past driving record is inadmissible to prove that a person acted negligently on the occasion in dispute."

Scott and Nemont have urged that we adopt the "Massachusetts rule" stated in *Watson v. Forbes*, 307 Mass. 383, 30 N.E.2d 228 (1940), that failure to have a driver's license is evidence of negligence. We decline to do so because, as stated in *Hawkins v. United States*, 395 A.2d 45, 47 (App.D.C.1978):

"We view under the circumstances of this case the testimony in dispute as having considerable prejudice and little probative value. *Punch v. United States*, D.C.App., 377 A.2d 1353 (1977), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). We are not persuaded that there is any causal connection between the failure of appellant to have a driver's license when he drove his car and the homicide occurring here. *State v. Davis*, 196 N.W.2d 885 (Iowa 1972)."

We are thus unable to agree with the contention of Scott and Nemont that "[i]f it is error, it is not prejudicial error."

## III. Stop Sign Instruction

The trial court instructed the jury:

"(5) Highway protected by 'STOP' Sign. If a through highway is protected by a 'STOP' sign, it is the duty of the driver approaching the highway from an intersecting highway to stop at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway.

"After coming to a full stop and looking both to the right and to the left, he may then, in the exercise of ordinary care, proceed into the intersection. If a

vehicle approaching on the protected highway is so near to the intersection as to constitute an apparent and immediate hazard, it is the duty of the driver of the stopped vehicle to wait until the other vehicle has passed. He may enter the intersection only if a prudent person would have reasonable ground to believe that the other vehicle proceeding at a lawful rate of speed is so far distant from the intersection that he could safely proceed in advance of the other vehicle."

The instruction, which is drawn from a pattern instruction, N.D.J.I. 207, had been requested by counsel for all the parties. Counsel for the plaintiffs, however, withdrew his request for that instruction before the trial commenced. Before the trial court instructed the jury, counsel for the plaintiffs objected to the last sentence of the instruction. Counsel for the Moose Lodge agreed that "the phrase 'proceeding at a lawful rate of speed' is an incorrect statement of the law since the adoption of comparative negligence." Counsel for Scott and Nemont did not further address the matter.

The plaintiffs argue that the instruction's last sentence suggests "that the person at the stop sign owes no duty to a person traveling at an unlawful rate of speed" and contend that "a person at a stop sign must heed any car traveling on the favored throughway, whether or not it is traveling at a lawful rate of speed." Scott and Nemont argue only that "there is nothing wrong with this instruction and it is the only appropriate instruction to give."

"It constitutes negligence for the unprivileged driver to fail to stop for the stop sign or to stop in a perfunctory manner and fail to yield the right of way to the favored motorist. Even if he stopped for a stop sign, it is negligence to proceed across a through highway into the path of an oncoming vehicle when it is obvious that the crossing cannot be made safely, or to proceed without looking and determining that there was no traffic approaching.

\* \* \* \* \* \*

"The fact that the automobile on the arterial highway was known to be traveling at a fast rate of speed, intensifies rather than diminishes the duty to give it the right of way." [Footnotes omitted.] L. Schwartz, *Trial of Automobile Accident Cases* § 31.05 (3d Ed.1985).

We have held that an automobile driver has a duty "to take every reasonable precaution to avoid a collision with another automobile even if such automobile is violating the rules of the road." *Thompson v. Nettum*, 163 N.W.2d 91, 101 (N.D.1968).

■ The greater the speed with which a vehicle is approaching, the more immediate the hazard it poses. We conclude that inclusion of the words, "proceeding at a lawful rate of speed," in the stop sign instruction constituted error. Our conclusion is consonant with § 39–10–24(2), N.D.C.C., which provides:

"39–10–24. *Stop signs and yield signs.*

\* \* \* \* \* \*

"2. Except when directed to proceed by a police officer, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection or junction of roadways."

### IV. Scott's Negligence

By its answers to Special Verdict Form Question No. 7(a) and Question No. 7(b), the jury found that Scott was negligent, but that his negligence was not a direct cause of Kanta's death. The plaintiffs have asserted that the evidence is insufficient to support the jury's finding that Scott's negligence was not a direct cause of

Kanta's death. Our reversal on other grounds renders unnecessary a determination of this issue.

For the reasons stated, we reverse the judgment dismissing the action against the Moose Lodge, Scott and Nemont, and the orders denying a new trial against them, and remand for a new trial against all defendants except Barke.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.