Misty **HORSTMEYER**, Plaintiff and Appellee,

v.

**GOLDEN EAGLE FIREWORKS; Olde Glory Marketing, Ltd.; and Starr Fireworks, Inc.,** Defendants and Appellants.

Civ. No. 940222.

Supreme Court of North Dakota.

July 27, 1995.

---

**4.** *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Calvin N. Rolfson (argued), and Michael Geiermann (appearance), Rolfson Schulz Lervick Law Offices, Bismarck, for plaintiff and appellee.

William P. Zuger (argued), Zuger Law Offices, Bismarck, for defendants and appellants.

MESCHKE, Justice.

Golden Eagle Fireworks, Olde Glory Marketing, Ltd., and Starr Fireworks, Inc., appeal from a judgment awarding damages to Misty Horstmeyer who was struck in the eye by exploding fireworks. We affirm.

Golden Eagle, Olde Glory, and Starr (collectively "Golden Eagle") are connected companies who import, distribute, and retail fireworks. In 1991, they sold fireworks that included a 37–shot parachute device named "Victory Celebration." If working properly, a "Victory Celebration" sequentially fired into the air 37 projectiles, each equipped with a parachute and a flaming flare.

On July 3, 1991, Misty's husband, Michael Horstmeyer, bought fireworks, including a "Victory Celebration," at a Golden Eagle stand on the outskirts of Bismarck. The Horstmeyers then drove to a family reunion in Nebraska. On the evening of July 4, Michael's brothers, David and Bernie, began shooting off fireworks while the rest of the family watched from a distance. Misty was seated in a lawn chair 65–70 feet from the fireworks display.

David lit the "Victory Celebration," and two or three projectiles with parachutes went up normally. Then, sparks struck David on his head and back, burning a hole in his shirt. A projectile simultaneously struck Misty near her left eye. The impact shattered the left lens of her eyeglasses, and the right lens was knocked out of the frame. This seriously injured Misty, who was permanently blinded in her left eye.

How Misty's injury happened is disputed. Misty's witnesses testified that the "Victory Celebration" violently exploded, sending shrapnel out the sides in all directions. Golden Eagle theorizes that a projectile from the "Victory Celebration" ricocheted off an overhead powerline and struck Misty.

Misty sued on grounds of strict liability and breach of warranty. The jury, answering special interrogatories, found Golden Eagle liable on both grounds and assessed damages at $356,880. The trial court entered judgment upon the jury verdict, and Golden Eagle appealed, presenting four questions:

I. Did the trial court properly admit expert testimony?

II. Did the trial court properly refuse to allow evidence of violation of statutes and regulations?

III. Did the trial court properly instruct on strict liability?

IV. Did the trial court properly refuse to submit a special verdict form to measure fault by Misty and third persons?

## I. EXPERT TESTIMONY

■ Golden Eagle argues the trial court erred in allowing testimony by David Opperman, Misty's expert witness. Golden Eagle asserts that Opperman had no specialized scientific education or training in physics or chemistry to qualify him as an expert on fireworks.

■ Expert testimony is allowable whenever "specialized knowledge" will assist the jury.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

NDREv 702. Whether a witness is qualified as an expert, and whether the testimony will assist the trier of fact, are decisions within the sound discretion of the trial court. *City of Devils Lake v. Davis*, 480 N.W.2d 720, 724 (N.D.1992); *In re Estate of Aune*, 478 N.W.2d 561, 564 (N.D.1991). The trial court's decision will not be overturned on appeal absent an abuse of discretion. *Davis*, 480 N.W.2d at 724; *Aune*, 478 N.W.2d at 564. As *Aune* said, the rule envisions generous allowance of the use of expert witnesses, if the witness is shown to have some degree of expertise in the relevant field.

This expert, Opperman, began his own fireworks company in 1959. When he sold the company in 1974, it had become the largest importer of professional display fireworks in the country. His company also produced large commercial fireworks displays for various clients around the country. He has a pyrotechnician's license from the City of Detroit, and has served on the Pyrotechnic Rules Committee of the State of Michigan for 20 years. He served as executive director of the National Pyrotechnic Director's Association for several years, and also served on its board of directors. Opperman has appeared as a fireworks expert on national television programs and has testified as a fireworks expert in over three dozen cases in more than two dozen states.

Golden Eagle stresses Opperman's lack of scientific training or education in arguing that he was not qualified to testify as an expert. However, a witness may be qualified as an expert by "knowledge, skill, [or] experience," Rule 702 recognizes. Although Opperman did not have a specialized scientific education in fireworks, he demonstrated extensive knowledge, skill, and experience from his 35 years in the fireworks industry.

■ Golden Eagle also attacks the basis for Opperman's opinion testimony. However, any weakness in an expert's opinion affects credibility, not admissibility. *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 163 (N.D.1985). We conclude that the trial court did not abuse its discretion in allowing Opperman to testify as an expert.

## II. EVIDENCE OF VIOLATIONS OF NEBRASKA LAWS

■ Golden Eagle sought to introduce evidence that Nebraska laws prohibited the use of the "Victory Celebration" there. Golden Eagle also requested instructions that the transportation and use of this type of fireworks were illegal in Nebraska, and that violations of the statutes and regulations by Misty, Michael, and David evidenced their negligence. The trial court refused to admit evidence of the Nebraska laws, concluding

those laws were irrelevant, and refused to give the requested instructions.

■ Golden Eagle designates its argument on appeal as whether the court erred in failing to give the instructions requested. The crucial question, however, is not the failure to instruct, but the admissibility of the evidence. It is not error for a court to refuse to give requested instructions not warranted by the evidence. *Dale v. Cronquist,* 493 N.W.2d 667, 670 (N.D.1992); *In re Estate of Ambers,* 477 N.W.2d 218, 221 (N.D.1991). The failure to give requested instructions becomes reversible only if the court erred in keeping out the evidence.

Section 28–1244, Neb.Rev.Stat., says:

*Fireworks; unlawful acts.* Except as provided in section 28–1245, it shall be unlawful for any person to possess, sell, offer for sale, bring into this state, or discharge any fireworks other than permissible fireworks.

"Permissible fireworks" is defined in Section 28–1241(7), Neb.Rev.Stat., and various state regulations identify those that are permissible. Misty concedes that the "Victory Celebration" was not "permissible fireworks" in Nebraska.

Golden Eagle argues that Misty and Michael transported the device into Nebraska in violation of the statute, and that David discharged the device in Nebraska in violation of the statute. Golden Eagle further argues that these statutory violations are evidence of negligence that should have been compared with Golden Eagle's fault under our comparative fault law.

■ Golden Eagle correctly states that violation of a statute, although not negligence per se, may evidence negligence. *See Gronneberg v. Hoffart,* 466 N.W.2d 809, 812 (N.D.1991); *Keyes v. Amundson,* 391 N.W.2d 602, 608 (N.D.1986). *See also* Restatement of Torts 2d § 286 (1965). For negligence, however, there must be a showing of a causal connection between the violation of the statute and the injury. *Ross by Kanta v. Scott,* 386 N.W.2d 18, 24 (N.D.1986). *See also* Prosser and Keeton, Torts § 36 (5th ed. 1984). Golden Eagle seeks to supply this causal connection by arguing, "Had the

Horstmeyers acted in accordance with the law of Nebraska, the fireworks would not have acted in Nebraska at all." This is akin to arguing that driving a vehicle without a license in violation of a statute is negligence, because otherwise the accident would not have happened. In other decisions, like *Dewitz by Nuestel v. Emery,* 508 N.W.2d 334, 337–38 (N.D.1993), and *Ross,* 386 N.W.2d at 24, we have rejected the notion that evidence of driving without a license is admissible to show negligence.

In this case, Golden Eagle's argument would create the ultimate irony. Golden Eagle essentially argues that its product was so dangerous that any use of it at all, at least within the State of Nebraska, was negligence. Under the theory urged by Golden Eagle, the Horstmeyers are guilty of negligence even if they used the product in the precise manner intended and directed by the manufacturer and seller. Responsibility would result from the geographical location of the product's use, not from the actual manner of its use. We believe public policy does not allow avoidance of liability by a seller of a defective product in this way.

Also, Golden Eagle thus seeks to minimize Misty's recovery for her own conduct in only passively participating in the transportation of the fireworks into Nebraska. We assume that Misty, who was injured while an innocent observer of the fireworks display, was among the class of persons intended to be protected by the statutory prohibition of certain fireworks. But, surely, the statute was not intended to shield manufacturers and sellers of defective fireworks from full liability to injured bystanders.

In a case like this, where the seller of a defective product seeks to avoid liability, not by the manner that the product was used, but by the geographical location where it was used, in a state that has banned its use, we conclude that evidence of the statutory ban is irrelevant and inadmissible to show negligence by the users of the product. The trial court did not err in refusing to admit evidence of Nebraska's statutes and regulations, or in refusing to instruct about violation of those statutes and regulations.

## III. STRICT LIABILITY INSTRUCTION

■ Golden Eagle argues that the strict liability instruction given by the trial court did not conform to NDCC 28–01.1–05(1).[1] Golden Eagle urges that the statute requires a claimant in a strict liability, tort case to prove that the product was defective when it left the manufacturer. Golden Eagle did not manufacture the "Victory Celebration," but imported it from China and sold it in the United States. The trial court instructed the jury that Misty had to prove the fireworks were defective "when they left the control and possession of the defendants."

Because the jury verdict found two separate grounds for liability, we conclude it is unnecessary to decide this issue. The trial court instructed on both strict liability and breach of warranty, and the jury answered separate interrogatories on each ground. The jury, in addition to finding strict liability, found that Golden Eagle had breached its implied warranty of fitness and that the breach caused Misty's damages.

■ Breach of warranty in contract and strict liability in tort are separate and distinct legal grounds. We have recognized this in prior decisions. *See Cooperative Power Ass'n v. Westinghouse Electric Corp.*, 493 N.W.2d 661, 663–66 (N.D.1992); *Spieker v. Westgo, Inc.*, 479 N.W.2d 837, 847–48 (N.D. 1992). *See also* Prosser and Keeton, Torts §§ 95, 101 (5th ed. 1984). Golden Eagle has not challenged the verdict on the warranty ground. Nor has Golden Eagle challenged the damages awarded and so, in fact, has conceded that the amount awarded was reasonable. Accordingly, we need not address the challenged instruction on strict liability when there is a separate and valid verdict on another ground that supports the amount of damages awarded.

## IV. SPECIAL VERDICT FORM

Golden Eagle argues that the trial court erred in refusing to give requested instructions on contributory fault of the claimant and on assessment of fault to third parties.

The core of this argument is Golden Eagle's assertion that the trial court was required to submit a special verdict form directing the jury to assess the fault of Misty, Michael, and David.

Golden Eagle relies upon the claimed statutory violations as the only basis to establish fault by Misty and Michael. Because, as we have concluded, the trial court properly excluded this evidence, there was no reason to submit an interrogatory to the jury about the fault of Misty or Michael.

■ For David, Golden Eagle argues that there was evidence for the jury to have found that David negligently discharged the "Victory Celebration" under an overhead powerline, causing a projectile to ricochet into Misty's eye. Golden Eagle contends that the trial court was therefore statutorily required to submit a special verdict form allowing assessment of a percentage of fault to David.

Golden Eagle relies upon the statute that governed products liability cases at the time of Misty's injury:

> The court may, and when requested by any party, shall direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury.

NDCC 32–03.2–03 (part).[2] This statute also directs that "each party is liable only for the amount of damages attributable to the percentage of fault of that party." *Id.* As *Dakota Grain Co. v. Ehrmantrout*, 502 N.W.2d 234, 238 (N.D.1993), clarified, this products liability statute applies to breach of warranty and negligence cases.

The use of special verdict forms is governed by NDRCivP 49(a):

> The court in its discretion may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions sus-

---

1. NDCC Ch. 28–01.1 was repealed in 1993. *See* 1993 N.D.Sess.Laws Ch. 324, § 5. The current statutes about products liability are codified at NDCC Ch. 28–01.3.

2. NDCC 32–03.2–03 was repealed in 1993. *See* 1993 N.D.Sess.Laws Ch. 324, § 5. The current statute is codified at NDCC 32–03.2–02.

ceptible of categorical or other brief answer or may submit written forms of the several special findings that might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it considers most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without a demand the court may make a finding; or, if it fails to do so, it is deemed to have made a finding in accord with the judgment on the special verdict.

As *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 165 n. 8 (N.D.1985), explains, our rule is derived from the corresponding federal rule, and we look to interpretive federal case law for guidance in construing our rule.

■ When a party fails to object to a special verdict form that omits questions on which evidence has been presented, the party is deemed to have waived the right to have these issues tried to the jury. *Kavanaugh v. Greenlee Tool Co.*, 944 F.2d 7, 11–12 (1st Cir.1991); *Reorganized Church of Jesus Christ of Latter Day Saints v. U.S. Gypsum Co.*, 882 F.2d 335, 338 (8th Cir.1989); *Reo Industries, Inc. v. Pangaea Resource Corp.*, 800 F.2d 498, 501 (5th Cir.1986). The party must specifically request that the question be submitted, and vague references to requested instructions or special verdict forms are insufficient. *Delta Engineering Corp. v. Scott*, 322 F.2d 11, 17 (5th Cir.1963), *cert. denied*, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964); *Davis v. Ampthill Ray-*

*on Workers, Inc.*, 446 F.Supp. 681, 685 n. 1 (E.D.Va.1978), *aff'd*, 594 F.2d 856 (4th Cir. 1979). Furthermore, in *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494, 499 (N.D.1974), this court said that the jury's findings on a special verdict are binding if the party does not object to the special verdict form or request his own form.

Golden Eagle has not drawn our attention to, nor does our review locate, any part of the record showing that Golden Eagle specifically objected to the special verdict form. Nor does the record contain any special verdict form requested by Golden Eagle. When given an opportunity to object to instructions or the verdict form, Golden Eagle's counsel did not object to the failure of the verdict form to address David's possible contributing fault. Counsel did make an oblique reference to Golden Eagle's proposed instructions in general, but the precedents hold that is insufficient to raise the issue under Rule 49(a) on special verdicts.

By failing to specifically demand its submission to the jury, Golden Eagle waived its right to jury trial of the omitted question, and the trial court is deemed to have made a finding on it in accord with the judgment on the special verdict. NDRCivP 49(a). Additionally, because the right to jury trial on the question was waived, there was no error in failing to give Golden Eagle's requested instruction on apportionment of fault.

The judgment is affirmed.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and LEVINE, JJ., concur.