2004 ND 132

**Carol Kay MOEN and LaRae A. Thomas, Co–Trustees of the Jay V. Thomas Family Trust, Plaintiffs,**

v.

**Laurie THOMAS, n/k/a Laurie Moorhead, individually and as surviving spouse, heir and personal representative of Jerry J. Thomas, deceased, and his estate, Defendants, Third Party Plaintiffs and Appellants,**

v.

**Fred C. Rathert and Neff Cresap Rathert Eiken & Irigoin, P.C., Third Party Defendants and Appellees.**

No. 20030309.

Supreme Court of North Dakota.

June 30, 2004.

Greg W. Hennessy, Williston, ND, for defendants, third-party plaintiffs and appellants.

Frederick E. Whisenand, Jr. (argued) and Kenneth G. Hedge (on brief), Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Williston, ND, for third-party defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Laurie Thomas appealed from a judgment entered upon a jury verdict dismissing her third-party complaint against Fred C. Rathert and his former law firm, Neff Cresap Rathert Eiken & Irigoin, P.C. ("Rathert"). We affirm.

I

[¶ 2] Many facts relevant to this case are set forth in our decisions resolving prior appeals in *Moen v. Thomas*, 2001 ND 95, 627 N.W.2d 146 ("*Moen I* "), and *Moen v. Thomas*, 2001 ND 110, 628 N.W.2d 325 ("*Moen II* "), and we will not reiterate them here except as necessary to explain the resolution of the issues in this appeal.

[¶ 3] Laurie Thomas and her husband, Jerry, lived on Jay Thomas's ranch. In October 1995, Jay Thomas died and his will gave Jerry Thomas, his son, the ranch headquarters and some additional land in Williams County. Jerry Thomas also received an option to purchase other ranch land on a contract for deed. As an alternative to the option, the will provided Jer-

ry Thomas could, for $3 per acre, lease the additional land annually for seven years, with an option to purchase during the lease term. Rathert was Jay Thomas's attorney and represented the estate upon Jay Thomas's death. Shortly after Jay Thomas died, Rathert met with Jay Thomas's widow and children to discuss probate of the will. Jay Thomas's widow and children held several family meetings to discuss various estate and tax issues. Rathert was present at some of the meetings, but was not present at others. During one of the early family meetings, Rathert orally advised the family members there might be possible conflicts and they should consult with their own attorneys. During a December 1995 meeting, Jerry Thomas declined the option to purchase the property on a contract for deed and stated he wanted to exercise his right to lease the property.

[¶ 4] As the probate progressed, Rathert advised the family to put Jay Thomas's ranch into a trust. Rathert drafted the trust agreement, which was signed by the family members, including Jerry Thomas, on December 3, 1996. The agreement provided that Jerry Thomas had the right and option to lease the property for agricultural purposes as provided in Jay Thomas's will. Two of Jay Thomas's daughters, LaRae Thomas and Carol Moen, were named co-trustees.

[¶ 5] Rathert originally intended to draft a written lease between the trust and Jerry Thomas. However, one of the co-trustees informed the office staff at Rathert's firm that the family would prepare its own lease. Jerry Thomas informed the family he did not want to be bound to a seven-year lease, but preferred to continue renting the property on an oral year-to-year lease. At Jerry Thomas's request, no written lease was executed, and the family agreed to an oral year-to-year lease. A handwritten note was delivered to Rathert's office by LaRae Thomas. It stated, "It is [Carol Moen's] and my intention to draw up our own lease agreement following terms stated w/in the Will." As a result, Rathert did not draft a written lease agreement, and no written agreement between Jerry Thomas and the trust was ever executed.

[¶ 6] Jerry Thomas died in 1997 and Laurie Thomas remained in possession of the land. In December 1997, she tendered a check to the trustees for the 1998 lease payment. The trustees notified her that there was no valid lease agreement. When Laurie Thomas remained on the land, the trustees initiated an action to quiet title to the property. Laurie Thomas answered, counterclaimed, and filed a third-party complaint for legal malpractice against Rathert.

[¶ 7] The quiet title action proceeded to trial, which resulted in a judgment quieting title in the trust. We affirmed on appeal. *Moen I*, 2001 ND 95, ¶ 1, 627 N.W.2d 146. Rathert was granted summary judgment on Laurie Thomas's legal malpractice claim, and in *Moen II*, we reversed and remanded. 2001 ND 110, ¶ 16, 628 N.W.2d 325 (concluding a genuine issue of material fact existed regarding whether there was an attorney-client relationship between Rathert and Jerry Thomas). On remand, trial was held before a six-person jury, which found Jerry Thomas subjectively believed he had an attorney-client relationship with Rathert, but the greater weight of the evidence did not indicate Rathert owed a duty to Jerry Thomas. Judgment was entered dismissing, with prejudice, Laurie Thomas's third-party complaint against Rathert.

[¶ 8] On appeal, Laurie Thomas raises three issues. First, she contends the special verdict, as accepted by the trial court, is inconsistent and irreconcilable. Second,

she argues the wording and content of the special verdict form precluded the jury from determining an ultimate issue of fact, confused the jury, and caused the jury to misapprehend the jury instructions. Finally, she claims the trial court abused its discretion by refusing to instruct the jury on Rathert's potential liability to her as a third-party beneficiary.

## II

[¶ 9] Laurie contends the special verdict is inconsistent and irreconcilable. In part, the special verdict form returned by the jury contained the following questions, instructions, and answers:

1. Do you find by a greater weight of the evidence that Jerry Thomas subjectively believed he had an attorney-client relationship with the Defendants?

√ Yes __ No

If you answered Question 1 "Yes" then answer Question 2. If you answered Question 1 "No" then sign and return the Verdict.

2. Do you find by a greater weight of evidence that the Defendants had a duty to Jerry Thomas?

__ Yes √ No

If you answered Question 2 "Yes" then answer Question 3. If you answered Question 2 "No" then sign and return the Verdict.

3. Do you find by a greater weight of the evidence that the Defendants breached any duty owed to Jerry Thomas?

__ Yes __ No

If you answered Question 3 "Yes" then answer Question 4. If you answered Question 3 "No" then sign and return the verdict.

During the reading of the jury's verdict, the clerk of court read the jury's answers to the first two questions, the second of which indicated the jury found no duty owed by Rathert to Jerry Thomas. Laurie Thomas contends that, although the jury was instructed not to answer the third question if it found no duty existed under question two, the clerk of court indicated during the reading of the verdict that the jury answered "No" to the third question anyway. The trial court stopped the clerk's reading of the verdict based on the jury's response to the second question. The jury was polled and all of the jury members indicated the result was their "true verdict." The jury was then released. Laurie Thomas did not object or move for a new trial. The paper verdict delivered to Laurie Thomas after trial indicated the jury answered "Yes" to the first question and "No" to the second question. There was no answer to the third question.

[¶ 10] Laurie Thomas claims, based upon the clerk's reading of the verdict, that the jury answered the third question on the special verdict form in plain disregard of the court's instructions. She argues this created an inconsistent and irreconcilable verdict because, without a duty, there cannot be a finding of no breach of duty.

[¶ 11] A special verdict is set aside on appeal only if it is perverse and clearly contrary to the evidence. *Moszer v. Witt*, 2001 ND 30, ¶ 11, 622 N.W.2d 223. We have adopted the following test for reconciling apparent conflicts in a jury's verdict:

"[W]hether the answers may fairly be said to represent a *logical and probable decision* on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be

reversed and the case remanded for a new trial."

*Id.* (quoting *Barta v. Hinds*, 1998 ND 104, ¶ 6, 578 N.W.2d 553) (emphasis in original). In this case, we are not convinced the alleged inconsistency in the verdict exists because the copy of the special verdict form provided to the parties indicates the jury only answered the first two questions. Therefore, Laurie Thomas's first issue on appeal is without merit, and she properly abandoned it during oral argument.

### III

■ [¶ 12] The second issue on appeal focuses on the trial court's inclusion of the word "subjectively" in the first question of the special verdict form, which addressed whether there was an attorney-client relationship between Rathert and Jerry Thomas. Laurie Thomas claims it was error for the trial court to include the word because it precluded the jury from finding Rathert owed an objective duty to Jerry Thomas. Whether an attorney-client relationship exists depends upon the particular circumstances of each case, and we agree with Laurie Thomas that an attorney-client relationship does not depend entirely upon a potential client's subjective belief. *See In re Disciplinary Action Against Giese*, 2003 ND 82, ¶ 17, 662 N.W.2d 250 ("The existence of an attorney-client relationship turns *largely* on the client's subjective belief it exists and looks to the nature of the work performed and to the circumstances under which confidences are divulged") (emphasis added). The client's subjective belief must also be objectively reasonable. *See In re Disciplinary Action Against McKechnie*, 2003 ND 22, ¶ 19, 656 N.W.2d 661 (quoting *ABA/BNA Lawyers' Manual On Professional Conduct*, at 31:101 (2002)) (An attorney-client relationship "may arise when a putative client reasonably believes that a particular lawyer is representing

him and the lawyer does not disabuse the individual of this belief"). Furthermore, a lawyer who knows an individual believes an attorney-client relationship exists, even if that belief is unreasonable, should disabuse the individual of that belief. *See generally*, 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 8.2 (5th ed.2000).

[¶ 13] We review Laurie Thomas's contentions on appeal in light of the established law of the case, *Deichert v. Fitch*, 424 N.W.2d 903, 905 (N.D.1988), and, within the context of this case, the inclusion of the word "subjectively" in the first special verdict question does not warrant reversal.

### A.

■ [¶ 14] Special verdict forms are governed by N.D.R.Civ.P. 49(a), and a trial court has broad discretion over the nature and scope of written questions submitted to the jury. *Nesvig v. Nesvig*, 2004 ND 37, ¶ 12, 676 N.W.2d 73. In reviewing a trial court's use of a special verdict, we consider whether the trial court abused its discretion, based on the evidence presented and the issues involved in the case. *Id.* Rule 49(a), N.D.R.Civ.P., provides in part:

> The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without a demand the court may make a finding; or, if it fails to do so, it is deemed to have made a finding in accord with the judgment on the special verdict.

■ [¶ 15] "[W]here no objection to a special verdict form was made, the jury's

finding upon the special verdict is binding." *Hoerr v. Northfield Foundry and Mach. Co.*, 376 N.W.2d 323, 327 (N.D. 1985). Further, when a party fails to object to a special verdict form that omits questions on which evidence has been presented, the party is deemed to have waived the right to have these issues tried to the jury. *Horstmeyer v. Golden Eagle Fireworks*, 534 N.W.2d 835, 840 (N.D.1995). A party must specifically request that the questions be submitted, and vague references to requested instructions or special verdict forms are insufficient. *Id.*

[¶ 16] In *Horstmeyer*, a negligence action, Golden Eagle asserted the trial court was required to submit a special verdict form allowing the jury to assess a percentage of fault to the plaintiff's husband. *Id.* at 839. However, the record did not contain a special verdict form submitted by Golden Eagle, and Golden Eagle's counsel did not specifically object to the failure of the special verdict form to address the plaintiff's husband's possible contributing fault. *Id.* at 840. When given an opportunity to object to the special verdict form and the instructions, Golden Eagle made an "oblique reference" to its proposed instructions in general, but did not object to the failure of the verdict form to address the husband's possible contributing fault. *Id.* Consequently, we held Golden Eagle's oblique reference to its proposed instructions was insufficient to raise an issue under N.D.R.Civ.P. 49(a). *Id.*

[¶ 17] In the present case, Laurie Thomas submitted a proposed special verdict form and proposed some jury instructions. At trial, she objected to any variations between the special verdict form and jury instructions submitted to the jury and her proposed special verdict form and jury instructions. However, Laurie Thomas's proposed instructions and proposed special verdict form did not address whether Jer-

ry Thomas reasonably believed Rathert was his attorney; therefore, her objection did not preserve for appeal the issue of whether the trial court erred by including the term "subjectively" in the first question on the special verdict form.

## B.

[¶ 18] Our disposition of this case would not change even if Laurie Thomas had properly preserved this issue for appeal. Laurie Thomas claims the jury could not find an objective duty existed between Rathert and Jerry Thomas because the first special verdict question confined the issue to Jerry Thomas's subjective belief. But, a jury is presumed to follow instructions provided by the court. *Lemer v. Campbell*, 1999 ND 223, ¶ 13, 602 N.W.2d 686. Neither the jury instructions nor the special verdict form precluded the jury from finding Rathert owed a duty to Jerry Thomas as a result of the inclusion of the term "subjectively" in the first special verdict question. The opening jury instructions informed the jury that it would decide whether an attorney-client relationship existed between Rathert and Jerry Thomas. The closing jury instructions defined the attorney-client relationship and instructed the jury that it would receive a special verdict form, upon which it would have to make special written findings upon each issue of fact. The closing jury instruction regarding an attorney-client relationship stated:

The existence of an attorney-client relationship does not depend on an express contract or the payment of fees, and may be implied from the parties' conduct. An attorney-client relationship is established when a party seeks and receives advice and assistance from an attorney on matters pertinent to the legal profession. The existence of an attorney-client relationship turns largely on the client's subjective belief it exists and looks to the nature of the work

performed and to the circumstances under which confidences are divulged. The existence of an attorney-client relationship is a question of fact.

This instruction did not limit the existence of an attorney-client relationship to a subjective belief on Jerry Thomas's part. Evaluating the evidence presented along with the jury instructions and the jury's answer to the first special verdict question, it is clear that the jury concluded an attorney-client relationship existed between Rathert and Jerry Thomas. *See Ingalls v. Paul Revere Life Ins. Group*, 1997 ND 43, ¶ 9, 561 N.W.2d 273.

■■■■■ [¶ 19] Laurie Thomas has not alleged that the remaining jury instructions did not properly instruct the jury on the applicable law once it determined an attorney-client relationship existed. Normally, whether a duty exists is a question of law for the court to decide unless it depends upon facts that must be determined by the fact finder. *Iglehart v. Iglehart*, 2003 ND 154, ¶ 11, 670 N.W.2d 343. The jury was not precluded from finding a duty existed between Rathert and Jerry Thomas if it answered "Yes" to the first special verdict question, and the second special verdict question did not limit the jury's consideration to an objective or subjective duty. There are many duties that arise in an attorney-client relationship, but this case turns on whether Rathert owed Jerry Thomas a duty to prepare a written lease between him and the trust. Although this duty could have arisen from Jerry Thomas's subjective belief an attorney-client relationship existed if that belief was objectively reasonable under the circumstances, the duty itself cannot be accurately characterized as objective or subjective. Sufficient evidence was presented at trial from which the jury could have concluded that no duty ever existed or that, if there once was a duty, it subsequently ceased to exist, and therefore, Rathert did not owe a duty to Jerry Thomas.

■■■ [¶ 20] Furthermore, in the context of this case, the first special verdict question made it easier for the jury to find an attorney-client relationship existed between Rathert and Jerry Thomas, and the jury's answer to it seems to be more beneficial to Laurie Thomas. To this extent, any error in the special verdict form was harmless to her. Accordingly, we conclude the trial court did not commit reversible error by submitting the special verdict form to the jury.

## IV

■■■ [¶ 21] Laurie Thomas contends the trial court erred by refusing to include questions on the special verdict form regarding Rathert's potential liability to her as a third-party beneficiary. She has not cited, nor have we been able to find, a jury instruction proposed by her regarding an attorney's liability to a third-party beneficiary. *See Amyotte v. Rolette County Housing Auth.*, 2003 ND 48, ¶ 5, 658 N.W.2d 324 ("While a trial court may properly refuse a requested instruction not applicable to the evidence, a party is entitled to an instruction on a valid applicable theory if there is some evidence to support it"). Instead, the proposed special verdict form she submitted included questions addressing the issue. However, in *Moen II*, a majority of this Court did not decide the question of third-party beneficiary liability resulting from an attorney-client relationship in a legal malpractice case. 2001 ND 110, ¶ 11 n. 2, 628 N.W.2d 325 (finding it unnecessary to address, as a question of first impression, whether we should recognize an exception to the requirement of attorney-client privity in a legal malpractice case because a genuine issue of material fact existed regarding whether there was an attorney-client relationship between Rathert and Jerry Thomas). Furthermore, the only evidence presented at trial in support of this contention was that

Rathert was aware Jerry Thomas had a wife and two children. *See id.* at ¶ 19 (Maring, J., concurring in part and dissenting in part) ("The cases extending the attorney's duty to non-clients are limited to factual situations in which the client's sole purpose in retaining an attorney is to benefit directly some third party"). Because this theory was not sufficiently developed at trial and in the requested instructions, the trial court did not abuse its discretion by refusing to include Laurie Thomas's requested questions in the special verdict form.

[¶ 22]   We affirm.

[¶ 23] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.