1997 ND 146

**In the Interest of P.A., a Child.**

**Ted RAINESALO, Petitioner and Appellee,**

v.

**P.A. and his mother, L.A., Respondents and Appellants.**

Civil Nos. 960308, 960362.

Supreme Court of North Dakota.

July 17, 1997.

Robert G. Ackre (argued), of Ackre & Baer Chartered, Cando, for respondents and appellants.

Lonnie Olson (argued), State's Attorney for Ramsey County, Devils Lake, James Peter Wang (appearance), State's Attorney for Benson County, Minnewaukan, for petitioner and appellee.

MARING, Justice.

[¶ 1] P.A., a juvenile, appeals from the July 3, 1996, order adjudicating him a delinquent child, and the September 19, 1996, order of confirmation, alleging there was not sufficient evidence to prove he committed the offenses of reckless endangerment and conspiracy to commit reckless endangerment, both class C felonies. We affirm the orders of the juvenile court.

[¶ 2] On May 18, 1996, at approximately 1:00 a.m., Sergeant Ted Rainesalo was approached by Aaron Black and Nathan Trottier in downtown Devils Lake. Black told Rainesalo someone "shot at" Trottier's truck as they were driving along Fourth Avenue near the Locke Block apartment building. It was later determined the object that broke the truck windshield was a rock. Black told Rainesalo he believed the rock came from a window or the roof of the Locke Block building.

[¶ 3] Based on this information, Rainesalo climbed on top of a neighboring building and surveyed the adjoining rooftops of Paul's Appliance building and the Locke Block building with binoculars. He saw four young men "jumping up and down" and throwing rocks off the roof onto the street below. Rainesalo recognized two of the youths from prior encounters, but did not recognize the other two. P.A. was not one of the youths Rainesalo recognized. Rainesalo did see all four of the youths throwing rocks into the street. While observing the youths, Rainesalo heard a "big

clunking noise" and looked over the edge of the building and saw a brick land in the street.

[¶ 4] Immediately after the brick landed, he heard a person in the street moan. The moan was determined to come from Chris VanSlyk, a mentally disabled man who was known to Rainesalo. VanSlyk has difficulty communicating verbally. Rainesalo questioned VanSlyk and VanSlyk "pick[ed] up the bricks and was giving them to [Rainesalo]." VanSlyk also pointed up to the building where the youths were seen and said to Rainesalo, "you better stop."

[¶ 5] Rainesalo yelled up to the boys, "[a]re we having fun yet?" and all four boys quickly entered an open window in the Locke Block building. Based on his familiarity with the building, Rainesalo determined the window through which the boys entered led into apartment 30. Rainesalo and another officer watched apartment 30 to ensure no one left while a search warrant was obtained. The search warrant was executed at approximately three o'clock in the morning. When the officers entered the apartment, there were eighteen people inside, ten of them teenage boys. Rainesalo took into custody the two youths he recognized as throwing rocks off the roof. These two boys identified the other two youths on the roof, one of them being P.A. "Four or five" of the teenage girls in the apartment agreed with that identification.

[¶ 6] Rainesalo escorted the boys from the apartment to his patrol car, and during the walk the boys "were blabbing about how they all agreed that they had been there." Rainesalo testified he also overheard the boys' conversation while they were in the back of the patrol car and "they more or less admitted to each other that they were there and it was fun."

[¶ 7] During the adjudication hearing, Black and Rainesalo were the only witnesses to testify. P.A. did not object to Rainesalo's testimony regarding the identification statements of the "four or five" girls, nor did he object to Rainesalo's testimony about what he overheard the boys saying in the back of the patrol car.

[¶ 8] P.A. and his mother appeal, claiming there was not sufficient competent evidence to find, beyond a reasonable doubt, that P.A. committed the acts of conspiracy to commit reckless endangerment and reckless endangerment.

[¶ 9] This court reviews a juvenile court's order similar to a trial de novo. *In Interest of A.E.*, 1997 ND 9, ¶ 3, 559 N.W.2d 215. This court's review is not limited to a determination of whether the juvenile court's findings are clearly erroneous, but we independently review the evidence, giving appreciable weight to the juvenile court's findings. *Id.* at ¶ 3, 559 N.W.2d 215.

N.D.C.C. § 12.1–06–04(1) defines conspiracy as follows:

> A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy. The agreement need not be explicit, but may be implicit in the fact of collaboration or existence of other circumstances.

Two elements must be proved under this statute: an agreement, and an overt act in furtherance of the conspiracy. *In Interest of J.C.S.*, 1997 ND 126, ¶ 10, 565 N.W.2d 759. An explicit agreement need not be proved, and the agreement may be implied by the existence of other supporting circumstances. *Id.*

[¶ 10] P.A. claims there is insufficient evidence to prove conspiracy to commit reckless endangerment. We do not agree. Sergeant Rainesalo testified he observed four boys on the roof of Paul's Appliance building, and all four were throwing handfuls of rocks to the ground. Immediately after seeing the boys throw rocks, he heard louder "clunking" noises, and observed a brick land in the street. At the same time, he heard a person in the street moan. Rainesalo observed Chris VanSlyk on the street below, holding his hands over his head and attempting to move away from where the rocks and bricks were landing. When Rainesalo called out to the boys, they all dove through a window into an apartment. After entering the apartment

with a search warrant, Rainesalo found the two boys he recognized on the roof and took them into custody. Rainesalo testified when he asked about the identities of the other two boys, they identified P.A. as one of them. Several of the girls in the apartment agreed with this identification. P.A. did not object to the admission of this testimony. Rainesalo also testified that while he walked the boys to the patrol car, they were "blabbing about how they all agreed that they had been there." While the four were in the patrol car, the boys "more or less admitted to each other that they had been there and it was fun." This testimony was also admitted without objection. Based on these facts, the court properly inferred the boys, including P.A., had agreed to throw rocks and bricks from the roof of a building onto a public sidewalk and street. We conclude this evidence satisfies the first element of conspiracy.

[¶ 11] The second element of conspiracy is an overt act in furtherance of the object of the conspiracy. This overt act need not be a crime in itself. *J.C.S.*, 1997 ND 126, at ¶ 12, 565 N.W.2d 759. It is also not necessary that the defendant commit the act himself; it is sufficient that one of the other conspirators committed the act with the defendant's knowledge. *Id.* Nearly any act will fulfill the overt act requirement. *Id.* Rainesalo testified that while the four boys were on the roof he saw all of them throwing rocks, and he observed three or four bricks thrown into the street at the same time a person was walking in front of the building. Regardless of whether P.A. himself or one of the other boys threw the bricks, this evidence is sufficient to satisfy the second element of the conspiracy statute.

[¶ 12] Reckless endangerment is defined in N.D.C.C. § 12.1–17–03 as follows:

A person is guilty of an offense if he creates a substantial risk of serious bodily injury or death to another. The offense is a class C felony if the circumstances manifest his extreme indifference to the value of human life. Otherwise it is a class A misdemeanor. There is risk within the meaning of this section if the potential for

harm exists, whether or not a particular person's safety is actually jeopardized.

P.A.'s throwing rocks off a two story building onto the street where a person was walking is sufficient to create a potential for harm. The evidence establishes bricks were also thrown by one or more of the four boys. If a person had been hit by a falling brick, serious bodily injury or death is a foreseeable consequence. N.D.C.C. § 12.1–02–02(1)(c) defines "recklessly" as "conscious and clear[ ] disregard of a substantial likelihood of the existence of the relevant . . . risks, such disregard involving a gross deviation from acceptable standards of conduct." It is a matter of common sense that a heavy object, such as a brick, thrown from one or two stories above ground could severely injure or kill a person. Knowing this, and knowing Chris VanSlyk was below the building while the boys were throwing rocks and bricks from the roof, P.A.'s conduct reaches the level of "reckless." The fact P.A. and his friends were laughing and agreeing their actions had "been fun" demonstrates extreme indifference to human life. The juvenile court had sufficient competent evidence to find P.A. guilty of reckless endangerment.

[¶ 13] P.A. argues Rainesalo's testimony about the girls' identification of P.A. as one of the four boys on the roof is hearsay and should not have been admitted. This testimony was not objected to at the adjudication hearing. One of the requirements for an effective appeal on any issue is that the matter has been properly raised in the trial court so the court can intelligently rule on it. *State v. Helgeson*, 303 N.W.2d 342, 346 (N.D. 1981). This requirement was established to prevent a defendant from inviting error upon the court in the hope he could prevail on an appeal of the error. *Id.* Rule 103, N.D.R.Evid. provides in pertinent part:

Rule 103. **RULINGS ON EVIDENCE**

(a) **Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating

the specific ground of objection, if the specific ground was not apparent from the content;

. . .

(d) **Errors Affecting Substantial Rights.** Nothing in this rule precludes taking notice of errors affecting substantial rights although they were not brought to the attention of the court.

P.A. must establish a substantial right of his has been affected and that he made a timely objection before error can be predicated upon the admission of the testimony of Rainesalo concerning the girls' identification of P.A. The application of Rule 103(a)(1) forecloses our consideration of P.A.'s alleged error because he failed to make a timely objection. P.A. has not persuaded us that admission of this testimony affected his substantial rights, which is necessary in order for us to analyze this issue under Rule 103(d), N.D.R.Evid. or under Rule 52(b), N.D.R.Crim.P., which limits this Court's review of error not preserved by objection to a determination of whether the alleged error constitutes obvious error affecting defendant's substantial rights. We must consider the entire record and the probable effect of the evidence alleged to be error in light of all the evidence in order to determine whether substantial rights were affected. *State v. McDonell*, 550 N.W.2d 62, 64 (N.D. 1996) (citing *State v. Woehlhoff*, 540 N.W.2d 162, 164 (N.D.1995)). Considering the entire record we cannot say that substantial injury resulted to P.A.'s case. Even if the testimony alleged as error was excluded, there is sufficient competent evidence to prove P.A.'s identification as one of the boys on the roof. The testimony of the girls' identification of P.A. was not the only identification evidence offered at the hearing.

[¶ 14] We affirm the juvenile court's July 3, 1996, order and the September 19, 1996, order of confirmation.

[¶ 15] VANDE WALLE, C.J., and NEUMANN, SANDSTROM, and MESCHKE, JJ., concur.