2003 ND 121

**Liliam GONZALEZ, Plaintiff and Appellee,**

v.

**Jessica TOUNJIAN, Defendant,**

and

**Dolund Partnership, L.L.P., Defendant and Appellant.**

**No. 20020263.**

Supreme Court of North Dakota.

July 18, 2003.

Daniel J. Dunn (argued), Maring Williams Law Office, Fargo, N.D. and Anthony J. Weiler (appeared), Maring Williams Law Office, Bismarck, N.D., for plaintiff and appellee.

Paul R. Oppegard (argued) and Corey J. Quinton (appeared), Smith Bakke Oppegard Porsborg Wolf, Moorhead, MN, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Dolund Partnership, L.L.P. ("Dolund") has appealed from a judgment, an order denying a motion to vacate the judgment, and an order denying a motion for a new trial in a negligence action arising out of an apartment fire. We affirm in part, reverse in part, and remand for entry of judgment in accordance with this opinion.

I

[¶ 2] Dolund owned an apartment building in downtown Fargo. Liliam Gonzalez and her daughter, Betsy, lived in the building. At approximately 7:50 a.m. on March 14, 1997, a fire, caused by an unattended candle, started in a neighboring apartment occupied by Jessica Tounjian. Betsy heard loud footsteps in the hallway and, upon opening the apartment door, saw thick smoke. Betsy told her mother there was a fire and ran out of the apartment toward the exit.

[¶ 3] Gonzalez followed Betsy toward the exit but her path was blocked by a metal "roll down" fire door which had dropped down in the hallway. The door was described as similar to a roll-top desk, suspended in the ceiling. The door is triggered by a fusable link which activates if the temperature reaches 180 degrees. Once the temperature is reached, the link releases and the metal door drops down to block the spread of the fire to other parts of the building.

[¶ 4] Gonzalez claims she had never seen the fire door before, and had never been told or warned about it by Dolund. She claims she tried in vain to open the door, but did not know how to operate it. She attempted to enter a nearby apartment but could not find the door because of the thick smoke in the hallway. Gonzalez was overcome by smoke and collapsed approximately ten feet from the fire door.

[¶ 5] Gonzalez was rescued by firefighters and taken to the hospital. She had suffered serious burns on fifteen percent of her body and had second degree burns of her airway. She was transferred to a regional burn center by air ambulance. Ultimately, Gonzalez had skin grafts on her arms, hands, and fingers, and had numerous surgeries to improve scarring on her shoulders.

[¶ 6] Gonzalez sued Tounjian and Dolund. Gonzalez settled her claims against Tounjian, and the case against Dolund was tried to a jury. The jury found that Dolund was 85 percent at fault and Tounjian 15 percent at fault for Gonzalez's injuries. The jury determined Gonzalez had sustained $285,000 in past economic damages and $1,500,000 in past noneconomic damages, and that she would have $650,000 in future economic damages and $500,000 in future noneconomic damages. The jury also awarded interest on her damages at the rate of 3.5 percent annually. The trial court reduced the damages to account for Tounjian's percentage of fault, added costs, disbursements, and interest, and entered judgment in the amount of $2,983,099.34. Dolund's post-trial motions to vacate the judgment and for a new trial were denied, and Dolund has appealed.

II

[¶ 7] Dolund argues the trial court applied an incorrect premises liability standard, thereby denying Dolund a fair trial.

A

[¶ 8] Dolund, citing Restatement (Second) of Torts § 358 (1965) and *Capsco Prods., Inc. v. Savageau*, 493 N.W.2d 650

(N.D.1992), contends North Dakota law does not impose liability upon a landlord for dangerous conditions on leased premises unless the landlord knows or has reason to know of the dangerous condition. Section 358 of the Restatement provides, in pertinent part:

> Undisclosed Dangerous Conditions Known to Lessor
>
> (1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
>
> (a) the lessee does not know or have reason to know of the condition or the risk involved, and
>
> (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

This Court relied upon § 358 in *Capsco*, holding that summary judgment was inappropriate where there was a factual dispute about the landlord's alleged misrepresentation and concealment that the water mains in a leased building had been shut off. *See also Francis v. Pic*, 226 N.W.2d 654, 656–59 (N.D.1975) (applying § 358 to find fact questions existed on whether landlord knew of defective staircase in leased single-family house). Dolund maintains that it can only be held liable if Gonzalez proves it had knowledge of dangerous conditions on the premises, and the trial court's evidentiary rulings and instructions to the jury employed an inappropriate standard of liability.

[¶ 9] Dolund's argument ignores the distinctions made between a landlord's duty when the injury is caused by a hidden dangerous condition in the leased premises and the landlord's broader duty when the injury is caused by defects in common areas of the property over which the landlord retained control. Gonzalez's theory in this case is that her injuries were caused, not by any defective or dangerous condition in her leased apartment, but by defects and dangerous conditions in the common areas of the building over which Dolund retained control. A landlord's liability for injuries caused by conditions in common areas is governed by Restatement (Second) of Torts § 360 (1965). *McCullagh v. Fortune*, 76 N.D. 669, 674, 38 N.W.2d 771, 774–75 (1949). Section 360 provides:

> Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use
>
> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

This Court relied upon § 360 in *McCullagh*, 76 N.D. at 674, 38 N.W.2d at 774–75 (quoting 30 Am.Jur. *Landlord and Tenant* § 688 (1941)), concluding:

> It is well settled that where the owner of premises leases parts thereof to different tenants and either expressly or impliedly reserves certain parts thereof,

such as entrances, halls, or stairways for the common use of different tenants, "it is his duty to exercise reasonable care to keep safe such parts of which he so reserves control, and if he is negligent in this regard, and a personal injury results by reason thereof to a tenant or to a person there in the right of the tenant, he is liable, provided the injury occurs while such part of the premises is being used in the manner intended."

[¶ 10] Under this standard, a landlord has a duty to use reasonable care to discover dangerous conditions in common areas and to keep those areas safe. This is in essence the "reasonable person" standard of ordinary negligence.

[¶ 11] Dolund does not dispute that the alleged dangerous conditions which Gonzalez contends caused her injuries were located in the common areas of the building, not in the premises leased to Gonzalez. Gonzalez alleged that the fire, smoke, and heat spread quickly into the hallway because Tounjian's hallway door did not have a self-closing device as required by the building code and the door itself was not properly fire-rated. Gonzalez further claimed the failure to install automatic sprinkler systems in the hallway, as required by the building code, allowed the fire and smoke to spread. Finally, Gonzalez argued the roll-down fire door trapped her in the smoke-filled hallway, causing her to lose consciousness and suffer severe injuries.

[¶ 12] Under the circumstances in this case, the trial court did not apply an incorrect standard of liability. The appropriate standard is that set out in *McCullagh* and § 360, and the standard set out in *Capsco* and § 358 is inapplicable. It was not necessary for Gonzalez to prove that Dolund had actual or constructive knowledge of dangerous conditions on the leased premises. Rather, because Gonzalez alleged her injuries were caused by dangerous conditions in the common areas of the building, the appropriate standard is whether Dolund acted reasonably to discover defective and dangerous conditions and keep the common areas safe.

B

[¶ 13] As part of its argument that the trial court applied an incorrect premises liability standard, Dolund argues the court erroneously sustained objections to evidence offered to show that the building had been inspected annually by the Fargo Fire Department and that it was the custom and practice in the industry for apartment owners and managers to rely upon fire department inspections to identify safety concerns in their buildings. Dolund contends this evidence would have shown it had no actual knowledge of the defects and dangerous conditions which Gonzalez alleges caused her injuries. Although we have rejected Dolund's argument that Gonzalez was required to prove knowledge of the dangerous conditions, we will address Dolund's evidentiary issues because this evidence would also be potentially relevant to show that Dolund acted reasonably under *McCullagh* and § 360. In a negligence action, customs or practices may be evidence of whether conduct meets the general standard of reasonable care under the circumstances. *Doan v. City of Bismarck*, 2001 ND 152, ¶ 26, 632 N.W.2d 815.

[¶ 14] We are perplexed by Dolund's argument. Dolund argues that the trial court disallowed introduction of evidence on fire department inspections and custom and practice in the industry, and that the court "refused to allow Dolund to argue that theory to the jury." The record demonstrates, and Dolund concedes, that numerous witnesses *were* allowed to testify about the annual fire department inspec-

tions of this building *and* that it was the custom and practice in the apartment management industry to rely upon those inspections. As for Dolund's assertion that the court refused to allow Dolund to argue custom and practice to the jury, the record contains the following from Dolund's counsel's closing argument:

> Now, for fire safety there was an annual fire inspection. You have heard this testimony and you have heard the question so much that I'm sure you could ask and answer these questions better than the lawyers. Fire departments are experts in fire safety. Fire departments are the policemen of the codes. I clearly proved to you that it is the custom in Fargo–Moorhead to utilize fire inspections as the basis for notice of compliance with the fire code. I called not one, I called not two, I called three witnesses on that and they all said that. Ann Springer said, well, she's been in real estate thirteen, fourteen years. Scott Bombenger said he has been in real estate for thirteen years. Mary Larson has been in real estate for thirty years, maybe more than that. She manages hundreds—thousands of apartments in Fargo–Moorhead. That is the custom. That is how it was done.
>
> That evidence that Dolund Partnership acted reasonably, well, take this to your own home, your own apartment, your own dorm. Judge the context of the reasonableness of that conduct by Dolund Partnership. If the fire department inspected your apartment, if the fire department inspected your home, if the fire department inspected your dormitory and they said it complied, they're experts, they're charged with the duty of enforcing the codes. If you—if you did whatever they said, isn't that reasonable? That's what the evidence has been in this case. It's undisputed.

[¶ 15] The record demonstrates Dolund was allowed to present evidence through multiple witnesses about the annual inspections and the industry custom and practice. Dolund also was permitted to argue custom and practice in its closing. Dolund has not drawn our attention to any instance in the record where the trial court restricted Dolund's counsel's closing argument.

[¶ 16] The only instance cited by Dolund where evidence regarding inspections or custom and usage was kept out was one occurrence during the cross-examination of Gonzalez's expert witness. Dolund's counsel asked the witness whether it is reasonable for a building owner to rely on what ·the building department told him. Gonzalez's counsel objected to the form of the question and, after excusing the jury and discussing the relevance of the evidence, the court sustained the objection.

[¶ 17] In light of the other evidence presented on this issue, we conclude that any potential error in sustaining this single objection would be harmless under N.D.R.Civ.P. 61:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

### C

[¶ 18] As part of its argument that the trial court applied an erroneous

premises liability standard, Dolund argues the trial court erred in instructing the jury that ignorance of the law is not a defense. Dolund argues that under *Capsco* and Restatement § 358 it could only be liable for statutory or code violations of which it had knowledge, and therefore this instruction was an incorrect statement of North Dakota law. We have concluded, however, that *Capsco* and § 358 are inapplicable where the injuries were caused by dangerous conditions, including statutory or code violations, in the common areas of the building.

[¶ 19] The instruction challenged by Dolund stated:

### KNOWLEDGE OF THE LAW

Every person is charged with knowledge of the provisions of statu[t]es, ordinances and regulations and must take notice thereof. Ignorance of the law is no excuse for failing to comply with the law.

Violation of a statute or ordinance or regulation may be considered as evidence of negligence.

[¶ 20] The instruction is a correct statement of North Dakota law. Every person generally is charged with knowledge of the provisions of statutes and regulations and must take notice thereof. *See Berg v. Hogan*, 322 N.W.2d 448, 452 n. 1 (N.D.1982); *Lumpkin v. Streifel*, 308 N.W.2d 878, 880 (N.D.1981). Ignorance of the law or a regulation is no excuse or defense. *Berg*, at 452; *Lumpkin*, at 880. Violation of a statutory or regulatory duty is evidence of negligence. *Praus v. Mack*, 2001 ND 80, ¶ 35, 626 N.W.2d 239; *Wolf v. Estate of Seright*, 1997 ND 240, ¶ 8, 573 N.W.2d 161.

[¶ 21] Dolund argues that, by instructing the jury that ignorance of the law is no excuse, the court converted this into a negligence per se case. The instructions, however, specifically direct that violation of a statute, ordinance, or regulation may be considered as *evidence* of negligence. The jury was not instructed a violation *is* negligence.

[¶ 22] We have summarized the trial court's duty when instructing the jury:

Jury instructions must fairly and adequately inform the jury of the applicable law. A trial court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of the applicable law. On appeal, jury instructions must be viewed as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient.

*Huber v. Oliver County*, 1999 ND 220, ¶ 10, 602 N.W.2d 710 (citations omitted); *see also Boser v. Hanson*, 2003 ND 95, ¶ 5, 663 N.W.2d 182. We conclude the challenged instruction was a correct statement of the law and, viewed as a whole, the jury instructions fairly and adequately informed the jury of the applicable law.

### III

[¶ 23] Dolund contends the trial court erred in admitting expert opinion testimony by Dr. David Griffin, the emergency room physician who treated Gonzalez immediately after the fire. Dolund contends the trial court erred in allowing Dr. Griffin to testify that Gonzalez would have lost consciousness in the smoke-filled hallway within ten to fifteen seconds and that, based upon Gonzalez's carbon monoxide levels, she suffered an organic brain injury.

[¶ 24] Introduction of expert testimony is governed by N.D.R.Ev. 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under Rule 702, expert testimony is admissible whenever specialized knowledge will assist the trier of fact. *Myer v. Rygg*, 2001 ND 123, ¶ 10, 630 N.W.2d 62. Rule 702 envisions generous allowance of the use of expert testimony if the witness is shown to have some degree of expertise in the field in which she is to testify. *Hamilton v. Oppen*, 2002 ND 185, ¶ 15, 653 N.W.2d 678; *Myer*, at ¶ 10. Whether a witness is qualified as an expert and whether the witness's testimony will assist the trier of fact are decisions within the sound discretion of the trial court which will not be overturned on appeal absent an abuse of discretion. *Hamilton*, at ¶ 15; *Horstmeyer v. Golden Eagle Fireworks*, 534 N.W.2d 835, 837 (N.D.1995).

[¶ 25] Dolund challenges Dr. Griffin's qualifications to testify about Gonzalez's loss of consciousness and brain injury because he was not a fire safety expert and did not specialize in neurology. As we concluded in *Myer*, 2001 ND 123, ¶¶ 14–15, 630 N.W.2d 62 (citations omitted):

An expert need not be a specialist in a highly particularized field if his knowledge, training, education, and experience will assist the trier of fact. The rule does not require an expert to have a formal title or to be licensed in any particular field, but recognizes it is the witness's actual qualifications that count by providing that an expert can be qualified by knowledge, skill, experience, training, or education.

We have previously held a trial court does not abuse its discretion by admitting expert testimony whenever specialized knowledge will assist the trier of fact, even if the expert does not possess a particular expertise or specific certification.

[¶ 26] Dr. Griffin was an experienced emergency room physician who had treated forty to fifty patients with major burn injuries. In addition to his medical training and experience, Dr. Griffin had served as a firefighter in the National Guard for four years. He had specialized firefighting training, including fire spread principles and carbon monoxide poisoning. Under these circumstances, we conclude the trial court did not abuse its discretion in concluding Dr. Griffin was qualified as an expert to testify about Gonzalez's loss of consciousness and brain injury.[1]

[¶ 27] Dolund also challenges the basis for Dr. Griffin's testimony, arguing he was not present at the scene of the fire, did not conduct neurological tests, and did not provide continuing treatment to Gonzalez after she was transferred from the emergency room. However, the weakness of the underlying basis for an expert's opinion goes to the credibility of the testimony, not admissibility:

As we have concluded in previous appeals attacking the basis for an expert's

1. It is unnecessary to decide whether we should adopt the standards for admitting expert or scientific evidence under Fed.R.Evid. 702 articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), because the result in this case would be the same under those standards and under our traditional standards governing admission of evidence under N.D.R.Ev. 702. *See Howe v. Microsoft Corp.*, 2003 ND 12, ¶ 27 n. 1, 656 N.W.2d 285; *Hamilton*, 2002 ND 185, ¶ 20 n. 2, 653 N.W.2d 678.

opinion, ordinarily weakness in an expert's opinion affects credibility, not admissibility. The trial court decides the qualifications of the witness to express an opinion on a given topic, but it is the trier of fact whose job it is to decide the expert witness's credibility and the weight to be given to the testimony.

*Myer*, 2001 ND 123, ¶ 20, 630 N.W.2d 62 (citations omitted); *see also Kluck v. Kluck*, 1997 ND 41, ¶ 12, 561 N.W.2d 263; *Horstmeyer*, 534 N.W.2d at 837. Credibility is a matter for the trier of fact, and the jury was entitled to give Dr. Griffin's testimony as much or as little weight as the jury felt it deserved. *See Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 163 (N.D.1985).

[¶ 28] We conclude the trial court did not abuse its discretion in admitting Dr. Griffin's testimony.

## IV

[¶ 29] Dolund contends the trial court erred in admitting into evidence an exhibit listing the prescription medications and skin care products Gonzalez was regularly using at the time of trial. The exhibit also listed the monthly and annual costs of the items. Dolund, citing *Symington v. Mayo*, 1999 ND 48, 590 N.W.2d 450, argues the exhibit lacked the necessary foundation because, in order to recover future medical expenses, Gonzalez would have had to present substantial evidence to establish with reasonable medical certainty that these future medical expenses were necessary.

[¶ 30] Appellate review of alleged errors in the admission of evidence is governed by N.D.R.Ev. 103, which provides in part:

(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . .

[¶ 31] Under Rule 103, one of the requirements for an effective appeal based upon erroneous admission of evidence is that the matter has been properly raised in the trial court so the court can intelligently rule on it. *In re P.A.*, 1997 ND 146, ¶ 13, 566 N.W.2d 422. As we explained in *Piatz v. Austin Mut. Ins. Co.*, 2002 ND 115, ¶ 7, 646 N.W.2d 681 (citations omitted):

A touchstone for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court so the trial court could effectively rule on it. To take advantage of irregularities during trial, a party must object at the time they occur, so that the trial court may take appropriate action if possible to remedy any prejudice that may have resulted. A party's failure to object to an irregularity at trial acts as a waiver.

We have noted that it is "fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Messer v. Bender*, 1997 ND 103, ¶ 10, 564 N.W.2d 291 (quoting 5 Am.Jur.2d *Appellate Review* § 690 (1995)); *see also Roise v. Kurtz*, 1998 ND 228, ¶ 9, 587 N.W.2d 573. The purpose of an appeal is to review the actions of the trial court, not to grant the appellant an opportunity to develop and expound upon new strategies or theories. *Roise*, at ¶ 9; *Mahoney v. Mahoney*, 1997 ND 149, ¶ 13, 567 N.W.2d 206.

[¶ 32] Rule 103 requires an objection on a specific ground unless the

reason for the objection is apparent from the context. *Scientific Application, Inc. v. Delkamp,* 303 N.W.2d 71, 77 (N.D.1981). Again, the reason for requiring a specific objection is to give the trial court an opportunity to rule upon the objection:

> If the administration of the exclusionary rules of evidence is to be fair and workable the judge must be informed promptly of contentions that evidence should be rejected, and the reasons therefor. The initiative is placed on the party, not on the judge. The general approach, accordingly, is that a failure to object to an offer of evidence at the time the offer is made, assigning the grounds, is a waiver upon appeal of any ground of complaint against its admission.

*City of Fargo v. Erickson,* 1999 ND 145, ¶ 22, 598 N.W.2d 787 (Sandstrom, J., concurring specially) (quoting Charles McCormick, McCormick on Evidence § 52, at 200–01 (4th ed.1992)) (emphasis omitted).

[¶ 33] Dolund has not drawn our attention to any part of the record demonstrating that it objected to admission of the exhibit based upon lack of foundation because there had not been a showing that the medications and skin care products were medically necessary, or that Dolund drew the court's attention to *Symington* to support its objection. Rather, the record shows a cryptic objection by Dolund when the exhibit was offered and received:

> MR. DUNN: We would offer Exhibit 390.
>
> MR. OPPEGARD: Your Honor, we have an objection and we have an understanding of how we're going to handle that. Perhaps counsel could explain to the Court.

> MR. DUNN: We're not going to publish this yet, Your Honor, until the Court has a chance to take a look at it and consider it.
>
> THE COURT: 390 is received.

[¶ 34] Dolund has not called our attention to any part of the record demonstrating it raised a specific objection based upon *Symington* or lack of foundation because there had been no showing of medical necessity. Nor was the basis of Dolund's objection apparent from the record. On this record, we conclude Dolund waived this objection to admission of the evidence and failed to properly preserve the issue for appeal.[2] *See South v. National R.R. Passenger Corp.,* 290 N.W.2d 819, 838 (N.D.1980).

## V

[¶ 35] Dolund argues the trial court erred in assessing interest on damages. Dolund contends that, although the jury awarded interest on damages in its special verdict, interest on past noneconomic damages and on all future damages are not allowed as a matter of law, and the trial court should have assessed interest only on Gonzalez's past economic damages.

[¶ 36] The special verdict in this case specifically separated past economic, past noneconomic, future economic, and future noneconomic damages, and Dolund challenged the award of interest at the trial court level. Accordingly, the question of the appropriateness of interest on each category of damages is properly before us. *Cf. Kreidt v. Burlington N. R.R.,* 2000 ND 150, ¶ 24, 615 N.W.2d 153 (declining to address whether interest is allowable on future damages because future and past

---

**2.** We recognize that N.D.R.Ev. 103(d) allows this Court to notice errors in the admission of evidence which affect a party's "substantial rights" even if the errors were not brought to the attention of the trial court. Admission of the exhibit in this case did not affect substantial rights.

damages were not separately itemized on the special verdict form); *Roise*, 1998 ND 228, ¶¶ 7–11, 587 N.W.2d 573 (declining to address whether interest on future damages and past noneconomic damages was appropriate under N.D.C.C. § 32–03–05 because the parties had not raised the issue in the trial court or on appeal).

[¶ 37] Prejudgment interest in tort cases is governed by N.D.C.C. § 32–03–05. *Roise*, 1998 ND 228, ¶ 8, 587 N.W.2d 573. Section 32–03–05 provides:

> When interest in discretion of court or jury. In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given in the discretion of the court or jury.

Under the statute, the trier of fact, whether court or jury, has broad discretion in determining whether to award prejudgment interest. *See Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 51, 658 N.W.2d 363; *Roise*, at ¶ 8; *Patch v. Sebelius*, 349 N.W.2d 637, 643 (N.D.1984). The trier of fact abuses its discretion only if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *Grinnell*, at ¶ 51.

## A

[¶ 38] Dolund contends that, as a matter of law, interest is not allowable on past noneconomic damages. We resolved this issue in *Kreidt*. Although in *Kreidt* we found it unnecessary to address a challenge to interest on future damages because the special verdict form did not separately itemize past and future damages, the special verdict form did separate economic and noneconomic damages. Therefore, we addressed the issue of whether

interest was allowable on noneconomic damages, concluding:

> While the issue of whether prejudgment interest should be awarded for non-economic damages is one for legitimate debate, our statute gives discretion to the trier-of-fact to award interest. It provides "In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given in the discretion of the court or jury." N.D.C.C. § 32–03–05. The plain language of the statute, *see* N.D.C.C. § 1–02–02, endorses no distinction between economic and non-economic damages. It leaves the question of interest up to the discretion of the judge or jury.
>
> Some courts have decried the uncertain nature of non-economic damages. However, one thing certain about all past damages is the victim is denied recovery until judgment. The jury awarded Kreidt economic and non-economic damages, and furthermore specified six percent interest should be paid on those damages. Under the circumstances of this case, and in light of the discretion given the trier-of-fact under our statute to award interest, we decline to set aside the jury's decision.

*Kreidt*, 2000 ND 150, ¶¶ 25–26, 615 N.W.2d 153 (citation omitted). Under *Kreidt* and N.D.C.C. § 32–03–05, interest on past noneconomic damages was allowable in the discretion of the jury.

## B

[¶ 39] Dolund also contends that interest should not be allowed on future damages. This Court has not previously resolved this issue. *See Kreidt*, 2000 ND 150, ¶ 24, 615 N.W.2d 153; *Roise*, 1998 ND 228, ¶ 11, 587 N.W.2d 573.

[¶ 40] There is an inherent illogic to awarding prejudgment interest on fu-

ture damages. By definition, future damages are expenses which the plaintiff has not yet incurred at the time of trial, and which will only arise at some future date. Interest is ordinarily viewed as compensation for the use of money for a period of time, due when the period has passed. *See* N.D.C.C. § 47–14–04. This logical inconsistency between the nature of interest and the awarding of interest on future damages is explained in Dean Richard, Note, *"An Award Fit for Alice in Wonderland"-Texas Allows Prejudgment Interest on Future Damages: C & H Nationwide, Inc. v. Thompson,* 25 Tex. Tech. L.Rev. 955, 980 (1994) (citations omitted), *quoted in Roise,* 1998 ND 228, ¶ 26 n. 2, 587 N.W.2d 573 (Sandstrom, J., dissenting):

> Prior to judgment, prejudgment interest on future damages is unnecessary because future damages are not yet due. Prejudgment interest is designed to compensate the plaintiff for the lost use of funds to which she is entitled prior to judgment. Since past damages represent the monetary equivalent of the harm suffered from the time of injury to the date of judgment, prejudgment interest is properly awarded on past damages as a means of fully compensating the plaintiff for the lost use of those funds prior to judgment. Future damages, however, represent the monetary equivalent of harm not yet suffered, but which is expected to be suffered "from the date of judgment forward in time." Thus, future damages are not retained by a defendant prior to judgment since such damages do not become due until the date of judgment. Accordingly, an award of prejudgment interest on future damages appears improper, because the defendant is forced to pay interest on

funds not yet owed, which results in an apparent over-compensation of the plaintiff.

[¶ 41] This rationale is especially applicable when we consider that future damages must be reduced to present value. We agree with the reasoning of Justice Sandstrom in his dissent in *Roise:*[3]

Under North Dakota law, future damages are *discounted* to present value— an award to be paid today for future damages is less than the amount which would be paid in the future when the damages are actually incurred.

Discounting is similar to interest, but it serves to reduce the amount of the award, rather than increase it. Discounting is used to determine what should be paid today to satisfy an obligation that will arise in the future. A statute allowing interest where discounting is allowed:

> overcompensates plaintiffs for future losses because it permits interest to accrue on those losses from the time of [injury], yet these future losses have been discounted to the time of judgment rather than to the time of [injury]. An investment of the present value of the future losses plus an amount representing pre-judgment interest on those losses will result in more funds in the plaintiff's account than the dollar amount of his losses.

Patrick J. McDivitt, *Comment, Prejudgment Interest as an Element of Damages: Proposed Solutions for a Colorado Problem,* 49 U. Colo. L.Rev. 335, 340 (1977). Thus, awarding prejudgment interest on future damages violates the requirement to *reduce* future damages to present value.

---

3. Inasmuch as the majority in *Roise* did not reach the issue of interest on future damages, our agreement now with the rationale of the *Roise* dissent is not inconsistent with the majority opinion in *Roise.*

*Roise,* 1998 ND 228, ¶¶ 27–28, 587 N.W.2d 573 (Sandstrom, J., dissenting) (citations omitted).

[¶ 42] The intent of reducing future damages to present value is to provide to the plaintiff on the date of judgment a lump sum which, if invested with interest, will theoretically provide sufficient sums to cover future expenses as they occur. An award of prejudgment interest on future damages back to the date of injury ignores the underlying rationale for reducing such damages to present value and would constitute a windfall to the plaintiff. We conclude that interest on future damages should not be awarded in a tort case.

## VI

[¶ 43] We have considered the remaining issues and arguments raised by the parties and find them to be without merit. We reverse and remand for entry of judgment without interest on future damages. In all other respects the judgment and orders appealed from are affirmed.

[¶ 44] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN and BENNY A. GRAFF, D.J., concur.

[¶ 45] The Honorable Benny A. Graff, D.J., sitting in place of Maring, J., disqualified.

SANDSTROM, Justice, concurring in part and dissenting in part.

[¶ 46] For the reasons set forth in Part IV of my dissent in *Roise v. Kurtz,* 1998 ND 228, ¶¶ 32–34, 587 N.W.2d 573, I dissent as to Part V–A of the majority opinion, which allows the award of interest for noneconomic damages. I continue to agree with the reasoning of the Supreme Court of South Dakota and Supreme Court of California, when they disallowed such interest under statutory provisions similar to those we have in North Dakota.

[¶ 47] I join in the remainder of the majority opinion.

[¶ 48] Dale V. Sandstrom