Filed 1/23/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 11

In the Interest of J.M. 

Lloyd Suhr, Burleigh County 

Assistant State’s Attorney, Petitioner and Appellee

v.

J.M., Respondent and Appellant

No. 20120253

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Lloyd C. Suhr (on brief), Assistant State’s Attorney, 514 East Thayer Avenue, Bismarck, N.D. 58501, for petitioner and appellee.

Richard E. Edinger (on brief), P.O. Box 1295, Fargo, N.D. 58107-1295, for respondent and appellant.

Interest of J.M.

No. 20120253

Sandstrom, Justice.

[¶1] J.M. appeals from an order denying his petition for discharge as a sexually dangerous individual.  He contends the district court erred in not striking the testimony and report of the State’s expert because she testified she had not reviewed his entire file at the State Hospital.  We affirm, concluding the court did not abuse its discretion in denying J.M.’s motion to strike the expert’s testimony and report and did not clearly err in deciding J.M. remains a sexually dangerous individual.  

I

[¶2] In October 2005, J.M. was committed to the custody of the executive director of the Department of Human Services as a sexually dangerous individual at the end of his incarceration for a 2001 conviction for gross sexual imposition involving a nine-year-old victim.  In 
Interest of J.M.
, 2006 ND 96, ¶¶ 1, 15, 23-26, 713 N.W.2d 518, we affirmed J.M.’s commitment, holding the evidence was sufficient to commit him as a sexually dangerous individual and an error in not holding a commitment hearing within 60 days after a finding of probable cause did not warrant vacation of the commitment order.  J.M.’s commitment as a sexually dangerous individual was continued in orders issued in August 2007, February 2009, and December 2010.  We summarily affirmed the 2010 order under N.D.R.App.P. 35.1(a)(2) in 
Matter of J.M.
, 2011 ND 105, ¶ 1, 799 N.W.2d 406.  

[¶3] J.M. petitioned for discharge in 2011.  At an evidentiary hearing, the district court heard testimony from the State’s expert, Jennifer Krance, Psy.D., and J.M.’s court-appointed expert, Stacey Benson, Psy.D.  Both experts had submitted written reports to the court before the hearing.  In her report and testimony, Dr. Krance opined that J.M. met the criteria for continued commitment as a sexually dangerous individual under N.D.C.C. ch. 25-03.3.  Dr. Krance testified J.M. declined to be interviewed for his evaluation, but she reviewed his updated chart information for treatment progress during the year, his charts and history available from prior evaluations, information from his former and current therapists, his criminal history, and his prior evaluations and diagnoses.  On cross-examination, Dr. Krance also testified she had reviewed a data base and summary of documents in J.M.’s file, but she had not reviewed his entire file at the State Hospital.  She further testified it was not “generally accepted in the scientific community of psychologists to render an opinion and diagnosis without reviewing the entire file.”  

[¶4] After the hearing, J.M. moved to strike Dr. Krance’s testimony and report, arguing “her entire diagnosis and evaluation of [J.M.] was based on psuedoscience [sic] and not science,” because “she did not adhere to generally accepted principles in the scientific community of psychologists” in that “she did not read the vast majority of the 2,000 pages of [J.M.’s] file” and “relied primarily on a 24 page synopsis prepared by another doctor.”  The district court denied J.M.’s motion to strike Dr. Krance’s testimony and report, ruling:

[J.M.’s] challenge to the admission of Dr. Krance’s testimony and report is based on Dr. Krance’s testimony that she did not review [J.M.’s] entire 2,000 page file prior to issuing her opinion.  However, Dr. Krance testified she reviewed [J.M.’s] chart information, [his]  treatment progress, all of [his] previous evaluations, and [his] history.  Dr. Krance also testified she obtained collateral information from [J.M.’s] psychological treatment providers, Dr. Mark Rodlund and Mark Monek.  Dr. Krance testified that she did not conduct a personal interview with [J.M.] because [he] refused the interview.  The Court finds that Dr. Krance had an adequate factual basis to form an opinion about whether [J.M.] remains a sexually dangerous individual.  The testimony that Dr. Krance did not review [J.M.’s] full 2,000 page file goes to the weight, not the admissibility, of Dr. Krance’s testimony and report. 

[¶5] The district court thereafter denied J.M.’s petition for discharge, finding clear and convincing evidence he remains a sexually dangerous individual.  The court found J.M. had engaged in sexually predatory conduct that resulted in convictions for corruption of a minor against a 15-year-old victim in 1998 and for gross sexual imposition against a nine-year-old victim in 2001.  The court found J.M. has a congenital or acquired condition manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction, because both Dr. Krance and Dr. Benson agreed he suffered from antisocial personality disorder and from substance abuse issues.  The court also found credible Dr. Krance’s diagnosis that J.M. suffered from “paraphilia NOS (not otherwise specified) polymorphously perverse.”  Citing the results of J.M.’s actuarial risk assessments and Dr. Krance’s testimony about his psychopathy and disorder, his paraphilia, his substance abuse issues, his lack of progress in treatment, and his inability to comply with rules in the treatment program at the State Hospital, the court found J.M.’s conditions make him likely to engage in further acts of sexual predatory conduct that constitute a danger to others.  The court also cited Dr. Krance’s report and testimony in finding a nexus between J.M.’s condition and dangerousness which the court found established his disorder was linked to his serious difficulty in controlling his behavior.  

[¶6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 25-03.3-02.   J.M.’s appeal is timely under N.D.C.C. § 25-03.3-19.  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 
25-03.3-19. 

II

[¶7] At a discharge hearing, the State has the burden of proving by clear and convincing evidence that the committed individual remains a sexually dangerous individual.  
Matter of M.D.
, 2012 ND 261, ¶ 7, 825 N.W.2d 838.  A “sexually dangerous individual” means: 

an individual who is shown to have [1] engaged in sexually predatory conduct and who [2] has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25-03.3-01(8).  “‘The phrase “likely to engage in further acts of sexually predatory conduct” means the individual’s propensity towards sexual violence is of such a degree as to pose a threat to others.’”  
In re Rubey
, 2012 ND 133, ¶ 8, 818 N.W.2d 731 (quoting 
In re Rubey
, 2011 ND 165, ¶ 5, 801 N.W.2d 702).  We have construed that statutory definition of a sexually dangerous individual in conjunction with 
Kansas v. Crane
, 534 U.S. 407 (2002), and substantive due process to require the State to prove the committed individual has serious difficulty controlling his or her behavior.  
Matter of G.R.H.
, 2006 ND 56, ¶ 18, 711 N.W.2d 587.  Under 
Crane
 and requirements for substantive due process, the definition of a sexually dangerous individual requires a nexus or connection between the disorder and dangerousness, including evidence showing the person has serious difficulty controlling his or her behavior, which distinguishes a sexually dangerous individual from the dangerous but typical recidivist in an ordinary criminal case.  
G.R.H.
, at ¶ 18.

[¶8] We apply a modified clearly erroneous standard in reviewing a district court’s decision on a petition for discharge: 

“We will affirm a trial court’s order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence.  In reviewing the trial court’s order, we give great deference to the court’s credibility determinations of expert witnesses and the weight to be given their testimony.  The trial court is the best credibility evaluator in cases of conflicting testimony and we will not second-guess the court’s credibility determinations.”

In re J.T.N.
, 2011 ND 231, ¶ 6, 807 N.W.2d 570 (quoting 
Matter of Wolff
, 2011 ND 76, ¶ 5, 796 N.W.2d 644).

III

[¶9] J.M. argues the district court erred in relying on Dr. Krance’s diagnosis and report, because she testified she did not review his entire file and did not adhere to the generally accepted principles of psychologists in the scientific community.  He asserts that on the basis of Dr. Krance’s own testimony, the scientific community of psychologists mandate a psychologist review a patient’s entire file before rendering a diagnosis and opinion on a patient.  He contends the court abused its discretion in denying his motion to strike Dr. Krance’s testimony and report, because her diagnosis and opinion were not based on science.  He thus claims the State did not prove by clear and convincing evidence he is likely to commit another sexually predatory act and has serious difficulty controlling his behavior. 

[¶10] Rule 702, N.D.R.Ev., deals with testimony by experts and provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

[¶11] Rule 702, N.D.R.Ev., envisions generous allowance of the use of expert testimony if the witness is shown to have some degree of expertise in the field in which the witness is to testify.  
State v. Hernandez
, 2005 ND 214, ¶ 8, 707 N.W.2d 449; 
Gonzalez v. Tounjian
, 2003 ND 121, ¶ 24, 665 N.W.2d 705.  An expert need not be a specialist in a highly particularized field if the expert’s knowledge, training, education, and experience will assist the trier of fact. 
Myer v. Rygg
, 2001 ND 123, ¶ 14, 630 N.W.2d 62.  A district court has broad discretion to determine whether a witness is qualified as an expert and whether the witness’s testimony will assist the trier of fact.  
Harfield v. Tate
, 2004 ND 45, ¶ 21, 675 N.W.2d 155.  A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law.  
Rygg
, at ¶ 8.  

[¶12] An expert’s opinion may be based on facts or data that are not admissible in evidence if the facts or data are of the type reasonably relied upon by experts in the field.  N.D.R.Ev. 703.  In 
Perius v. Nodak Mut. Ins. Co.
, 2010 ND 80, ¶ 23, 782 N.W.2d 355 (quoting 
Stevens v. Stanford
, 766 So.2d 849, 850 (Ala. Civ. App. 1999)), we discussed the adequacy of the basis for an expert opinion in the context of the interplay between the sufficiency of affidavits for summary judgment under N.D.R.Civ.P. 56 and the evidentiary rules for expert testimony:

“A witness, even one qualified as an expert, must have a factual basis for an opinion.  Although any challenge to the adequacy of the factual basis for an expert’s opinion normally goes to the weight rather than to the admissibility of the evidence, if the facts relied on by the witness clearly are insufficient to support an opinion, then the challenge may go even to the admissibility of the opinion.  A witness’s testimony cannot be based on mere speculation and conjecture.”

[¶13] J.M. and the State initially agreed to the credentials of Dr. Krance and Dr. Benson as experts and agreed to the admissibility of their reports.  Dr. Krance’s opinion was based on her review of treatment notes during the review period and information from prior evaluations.  Dr. Krance testified she also reviewed information from J.M.’s former and current therapists.  Dr. Krance’s credentials establish she had “scientific, technical, or other specialized knowledge” to assist the trier of fact under N.D.R.Ev. 702, and her testimony establishes an adequate factual basis for an opinion on whether J.M. remained a sexually dangerous individual.  

[¶14] We agree with the district court that Dr. Krance’s admitted failure to review J.M.’s entire file at the State Hospital goes to the weight of her opinion and not to its admissibility.  On this record, we conclude the district court’s decision not to strike Dr. Krance’s report and testimony was not arbitrary, unreasonable, or unconscionable, was not a misinterpretation or misapplication of the law, and was the product of a rational mental process.  We therefore conclude the court did not abuse its discretion in not striking Dr. Krance’s testimony and opinion and in relying on her opinion in deciding the issues in this case.  We further conclude Dr. Krance’s opinion and report support the district court’s decision that J.M. remains a sexually dangerous individual.  We therefore conclude the court’s findings are not clearly erroneous and the court did not err in denying J.M.’s petition for discharge.  

IV

[¶15] We affirm the district court order.  

[¶16] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.